CARTER et al., Appellants, v. DILLEY et al.

**Division One, March 12, 1902.**

1. **Appeals:** TIME OF FILING BRIEFS: RULE 11. Where appellants have served respondents with briefs and abstracts thirty days before the case is set for hearing in the Supreme Court, a failure to file ten copies thereof with the clerk of said court "in like time," will not authorize a dismissal of the appeal, if respondents reply thereto in due course under the rule, and do not file their motion to dismiss until the day set for the hearing. By so doing they waive the technical failure; besides, so much of the rule as was made for their benefit was complied with.

2. **Voluntary Conveyances:** UNDUE INFLUENCE. An old man, in accordance with views for which he had long contended, that the proper disposition for a father to make of his lands was to give them to his sons, as his father had done before him, conveyed certain lands to his sons as they married and assumed an independent career, and shortly before his death gave other married sons certain lands apart from his homestead, which he conveyed to his two sons who had remained at home with him, expressly requesting his wife not to sign that deed, thus excluding his married daughters from any participation in his estate. *Held*, that there was nothing in these facts that indicated any undue influence over him by any of his sons thus favored.

3. ———: INCAPACITY OF GRANTOR. Since the weight of oral evidence in a suit to set aside voluntary deeds to certain children by a deceased grantor on the ground that he was incapacitated to make the same, depends largely on the character, experience and intelligence of the witnesses, the appellate court, where this evidence consists of incongruous, inconsistent and conflicting statements, will defer to the finding of the chancellor on this fact.

4. ———: DELIVERY: AMENDMENT OF PLEADING. Where plaintiff has based his suit to set aside voluntary deeds by a father to certain favored children, on the ground of their undue influence over him, and his mental incapacity to make the same, and the suit has been tried on that theory, it is not proper to permit him, after all the evidence in chief has been given on each side, to amend his petition

to charge that such deeds were never delivered, for that claim is wholly inconsistent with the cause of action stated in the original petition.

Appeal from Daviess Circuit Court.—*Hon. E. J. Broaddus,* Judge.

AFFIRMED.

*Hamilton & Dudley* and *Eads & Pickle* for appellants.

(1) Where the relation of confidence and trust exist between the grantor and grantee, and the grantor is weak and feeble of mind and body, slow to understand, easily persuaded and influenced, the deed must be held to be the result of undue influence and illegal. Ennis v. Burnham, 159 Mo. 499. (2) The law imposes upon every person occupying a relation of confidence to another, who receives a gift from the latter, the burden of showing beyond a reasonable doubt the absolute fairness of the transaction, before it will permit the donee to retain the gift. Hall v. Kappenberger, 97 Mo. 509; Ford v. Hennessy, 70 Mo. 580; Bradshaw v. Yates, 67 Mo. 221; Rankin v. Patten, 65 Mo. 378; Cadwallader v. West, 48 Mo. 483. (3) This is an action to set aside certain deeds. The court should have permitted the amendment setting up a failure of delivery of deeds. In courts of equity it is proper to amend the bill after evidence is taken so as to make it conform to the proof. The proposed amendment would not have changed the cause of action to set aside the deeds, but would have only added another reason for setting them aside. Harlan v. Moore, 132 Mo. 483; Chiles v. Railroad, 117 Mo. 414; Pratt v. Walther, 42 Mo. App. 491. (4) The undue influence exercised in the making of a will is not a standard for testing that influence in the making of a contract between the living. Ennis v. Burnham, 159 Mo. 494; Martin v. Baker, 135 Mo. 495; Kirschner v. Kirschner, 113 Mo. 290. (5) If

this was a gift *causa mortis,* the subject of the gift must actually be delivered in the lifetime of the grantor, or else it is void.    Tyler v. Hall, 106 Mo. 313; Hay v. Hay, 65 Mo. 689; Stanford v. Stanford, 97 Mo. 231.

*Thos. A. Gaines, Hicklin, Leopard & Hicklin* and *Harry K. Allen* for respondents.

(1) The circuit court, in refusing to permit plaintiffs to amend their petition so as to allege non-delivery of deeds, exercised its discretion soundly.    And further, the amendment would have probably changed the cause of action to the extent of the amendment at least, for had non-delivery of deeds been the sole ground for relief, a court of equity would probably not grant it, for the reason that one, if not two, adequate remedies at law would be open to plaintiffs, one being ejectment as the heirs of Henry Dilley, and the other under the statute as now amended, to quiet title (sec. 650, R. S. 1899). And still further, non-delivery of deeds was not conceded—it was disputed, but as Barney Dilley to whom testimony of Meadows tended to show deeds were given after death of Henry Dilley, had been held incompetent as a witness by the court, it will not here be presumed that defendants were prepared to offer counter-testimony had the court refused to strike that part of Meadows' testimony from the record, it being offered after both sides had closed in chief.    Section 657, Revised Statutes 1899, permitting amendments, so as to conform to proof  can not be invoked where there is uncertainty or dispute as to the facts.    (2) No relations of trust and confidence have been shown between Henry Dilley and the grantees in the deeds, whereby the burden is placed upon defendants, as is in Ennis v. Burnham, 159 Mo. 494; and that the distinction between a will and a deed, under the facts in this case, has no application.    The case, then, turns on whether or not Henry Dilley had sufficient mental capacity to make

the deeds, and whether or not undue influence operated to bring about the result. The true test as to capacity is whether Henry Dilley had sufficient reason to know and understand what he was doing when he made the deeds. Keithley v. Keithley, 85 Mo. 217; Cutler v. Zollinger, 117 Mo. 92; Moore v. Moore, 67 Mo. 192; Pennington v. Stanton, 125 Mo. 658; Benoist v. Murrin, 58 Mo. 307; Norton v. Paxton, 110 Mo. 456; Harvey v. Sullens, 56 Mo. 372; English v. Porter, 109 Ill. 285. The burden of proving mental incapacity and undue influence rests on appellants. Taylor v. Wilburn, 20 Mo. 306; Rankin v. Rankin, 61 Mo. 295; Myers. v. Hanger, 98 Mo. 433; Thompson v. Ish, 99 Mo. 160; Maddock v. Maddock, 114 Mo. 35; Priest v. Way, 87 Mo. 16; Cowee v. Cornell, 75 N. Y. 91. The exercise of undue influence must be such as to destroy the free agency of the grantor or testator. Thompson v. Ish, supra; Jackson v. Hardin, 83 Mo. 195; Norton v. Paxton, supra; Jarman on Wills (1 Am. Ed.), p. 133; Shepardson v. Potter, 18 N. W. 575; Mooney v. Olson, 22 Kan. 79; Cutler v. Zollinger, supra.

BRACE, P. J.—This is a suit in equity to set aside two deeds dated June 9, 1896, which the petition alleges were made and signed by Henry Dilley, deceased, and placed on record in the office of the recorder of deeds of Daviess county, one conveying the southwest quarter of section 21, township 61, range 29, in said county, containing 160 acres, to his sons John A. Dilley and Willis B. Dilley, the other conveying the east half of the southwest quarter and the northwest quarter of the southwest quarter of section 20, township 61, range 29 in said county, containing 120 acres, to his son Charles R. Dilley, on the grounds that the said Henry Dilley at said date was of unsound mind, incapable of making an intelligent disposition of his property, that said deeds were without consideration, and that said Henry F. Dilley was unduly influenced and procured by said parties to make and sign said deeds for

the purpose of preventing plaintiffs from inheriting any part of their father's said real estate. The said Henry Dilley died on July 9, 1896, leaving him surviving a widow and eleven children, five sons and six daughters. The plaintiffs are three married daughters of said deceased, and the defendants are the five sons, the other three daughters, and the widow of said deceased. The trial court found the issues for the defendants, and from the judgment thereon in their favor, the plaintiffs appeal.

(1) This case was brought here on a copy of the judgment in lieu of a complete abstract and was set for hearing on January 9, 1902. On December 7, 1901, a copy of the complete abstract, together with appellants' brief, was delivered to the respondents, and on December 27, 1901, ten copies thereof were filed with the clerk of this court. On January 3, 1902, the respondents delivered to the appellants their reply brief based on such abstract, and filed the same on January 8, 1902, and on January 9, 1902, filed their motion to dismiss the appeal for failure to comply with that part of rule 11, which requires ten copies of the abstract to be filed with the clerk thirty days before the cause is set for hearing. On that day the cause was without argument submitted on briefs, and this motion is now to be disposed of. It will be overruled; so much of the rule as was intended for the respondents' benefit was complied with. They received a complete copy of the abstract more than thirty days before the day on which the case was set for hearing. That the ten copies were not filed with the clerk "in like time" worked no injury or even inconvenience to them. By replying in due course under the rule, and not making any complaint until the day the case was set for hearing, they must be held to have waived this mere technical failure that in no way injuriously affected their interests.

(2) The evidence tended to prove that when Henry Dilley died on July 9, 1896, he was about sixty-nine years of age,

and was then residing on the 160-acre tract in question, which was his homestead, and which was incumbered by mortgage for about one thousand dollars. His family residing with him consisting of his wife Minerva, his two sons John A. and Willis B., and his two daughters Dora and Lissia. He was a farmer, had sometime been a soldier and school-teacher, and seems to have been a man of affairs in his neighborhood, and to have been a man of good mind and strong will. He was not only the head of the family, but its dominant spirit. He seems to have had one notion somewhat antique and peculiar, and that was that the proper disposition for a father to make of his lands was to give them to his sons, as his own father seems to have done, saying that he intended to do so, and if all fathers would do likewise all the girls would have homes. He lived up to this idea. During his lifetime four of his daughters, America, Laura B., Mary and Sarah, married and left home, and to neither of them did he give any land. Three of his sons, Barney, Harvey and Charles R., also married and left home and thereupon to each of them he gave a tract of land. To Barney by deed he conveyed a 45-acre tract, to Harvey he deeded an 80-acre tract. Prior to his last illness he had made no conveyance to Charles R. of the 120-acre tract in question, the title to which was threatened and afterwards litigated (Blankenship v. Dilley, 162 Mo. 338) and which was incumbered to the amount of $400. But Charles had gone into possession of the same, was living upon it, and paid the interest on the mortgage debt. About the year 1885, Henry Dilley lost his eyesight, but thereafter continued managing his business as before, with the assistance of his three younger sons, John A., Charles R., and Willis B., then aged, respectively, about eighteen, sixteen and fourteen years. This continued until Charles R. married, and moved onto the 120-acre tract, and thereafter he continued the management of his business as before, with the assistance of the other two sons, John A. and Willis B., until his last illness, with which he

Carter v. Dilley.

was taken down about the last of May or first of June, 1896. His disease was an affection of the kidneys, producing a dropsical condition of the system, accompanied by a very sore mouth. About a year before, he had a similar attack, which was slight, however, and from which he recovered temporarily, and thereafter his disease threatened no serious consequences until the last of May or first of June. Prior to the sixth of June his disease does not seem to have affected his mind in any manner; on that day and afterwards he would at times become "flighty," and talk at random of imaginary things, but when aroused from his semi-comatose state by anything that attracted his attention, readily recognized his situation, his family and his friends, and talked rationally and intelligently. This condition continued until the ninth of June, by which time all of his children had gathered in the old home, where he was also being visited by many of his neighbors and friends, and when he became impressed with the idea that his sickness would probably terminate fatally and expressed a desire to "fix up his business," said he wanted to make some deeds, that he didn't want to make a will, "they are too easily broken." In pursuance of his request a notary was sent for, who came on the evening of that day, after dark, with blank deeds, found the old man quite feeble, surrounded by his family and some neighbors, was informed of his wishes, but in view of the attendant confusion and his then weak and suffering condition, postponed preparing the deeds until next morning. The notary stayed all night, the next morning received a description of the lands from the old man, with directions as to the disposition he wanted made of them, verified the numbers by his tax receipts, prepared the deeds in question, in accordance with those directions, read them over to him and he then signed and acknowledged them, his wife joining with him in the deed to Charles R. of the 120-acre tract, but at his request not joining in the deed to John A. and Willis B. of the homestead. There is no substantial evi-

dence tending to prove that he was induced to make and sign these deeds or either of them by the undue influence of the said John A. and Willis B. Dilley or either of them, as charged in the petition, and the evidence as a whole tends to show that the deeds were in accordance with his settled intentions as to the disposition of these lands. The only serious question in the case was as to his mental condition at the time he signed and acknowledged them. On this issue a score of witnesses were examined, whose evidence as spread upon the record before us presents such a mass of incongruous, inconsistent and conflicting statements as to preclude a satisfactory summary thereof within reasonable space. Except one deposition, the evidence was all oral. Its weight depended largely on the character, experience, fairness and intelligence of the witnesses. It was patiently heard by an experienced and judicious chancellor. He was in a much more favorable position to wisely determine its preponderance than we are. After a careful reading and consideration of this evidence, we can not say that he did not determine that preponderance correctly. Hence, deferring to his opinion under such circumstances, as we are accustomed to do, we think his judgment on this issue ought also to be sustained.

(3) After all the evidence in chief on each side had been given, the notary was recalled by the plaintiff and testified that after the deeds were signed and acknowledged, he took them home and affixed his seal, where they remained (he supposing that some of the family would call for them) until after the death of Henry Dilley, when he delivered them to his son, Barney Dilley. On the objection of the defendants, this evidence was stricken out. Thereupon plaintiffs asked leave to amend their petition by inserting the allegation that "there was no delivery of the deeds in question during the lifetime of the grantor," so that the same will conform to the testimony given in this case, to which the defendants objected; the court sustained the objection, and the defendants excepted, and as-

signs this action of the court as error. Amendments of pleadings before final judgment are permitted only in case the amendment does "not change substantially the claim or defense." [R. S. 1899, sec. 657.]

A deed in contemplation of law is not made (i. e., executed) until it is signed and delivered. The delivery is just as essential to the execution of a deed as the signing. The plaintiffs' cause of action was based and up to this point had been tried upon the theory that these deeds had been executed by Henry Dilley, and the ground upon which the aid of a court of equity was invoked to set them aside was that he was of unsound mind when he executed them, and their execution was procured by undue influence. Now by this evidence and amendment it was sought to change the claim stated in the petition upon which they were asked to be set aside, by introducing another claim wholly inconsistent therewith, i. e., that they were not delivered—a change in plaintiffs' claim, making necessary also a change in the defense thereto. This was not permissible under the statute, and the court committed no error in refusing to allow it.

It follows from what has been said that the judgment of the circuit court ought to be affirmed, and it is accordingly so ordered.

All concur, except *Valliant, J.,* absent.