14 SUPREME COURT OF MISSOURI,

State ex rel. Bankers Life Co. v. Reynolds.

THE STATE ex rel. BANKERS LIFE COMPANY OF
DES MOINES, IOWA, v. GEORGE D. REYNOLDS
et al., Judges of St. Louis Court of Appeals.

In Banc, February 15, 1919.

1. **LIFE INSURANCE: Proof of Non-Payment of Premium: Burden.**
In an action on a life insurance policy against an assessment com-
pany where the answer admits the issuance of the policy, that
plaintiff was the designated beneficiary and the death of the in-
sured, and avers that demand for payment had been made and
payment refused, it is only necessary for plaintiff, in order to
make out a prima-facie case, to introduce the policy in evidence,
and thereafter the burden of showing the assessments were un-
paid at the death of the insured rests upon the defendant com-
pany. The rule as to the burden of proof in an action on a con-
tract of life insurance, as to the matter of payment of premiums,
is an exception to the general rule.

2. **PLEADING: Amendment: Discretion: Changing Defense.** Amend-
ments of pleadings are largely, but not entirely, within the dis-
cretion of the trial court, and under the statute it is not an abuse
of the discretion to refuse to permit an amendment which substan-
tially changes the defense. So that in an action on a life insurance
policy, it was not an abuse of discretion to refuse to permit de-
fendant, after all the evidence was in, to amend its answer by set-
ting up the Statute of Limitations as a defense.

3. **LIFE INSURANCE: Payment of Premiums: Admission: Statement
by Defendant's Agent.** Neither the plaintiff nor a witness produced
by her in her suit on an insurance policy can testify that the
cashier of the bank authorized to receive payments of assessments
from members who held certificates of insurance in defendant
company had stated to them, after the death of the insured, that
all assessments on the certificate sued on had been paid. Said
subsequent verbal statements are not competent as *res gestae* or
on the theory that said bank was the defendant's agent, and a
holding by the Court of Appeals that such testimony was com-
petent was in conflict with the ruling of the Supreme Court in
Redmon v. Railroad, 185 Mo. l. c. 11, and many other cases.

*Held*, by BOND, C. J., dissenting, with whom WALKER, J., con-
curs, that the depository bank in this case was, to all intents
and purposes, the insurance company itself, in so far as
concerns the payment of premiums by certificate-holders, and
its cashier's statements related strictly to the performance of
duties entrusted to the bank, and his admissions and declara-

tions had the same evidentiary force as if they had been made by the defendant itself, and therefore were admissible, and a ruling that they were admissible was not in conflict with any previous ruling of the Supreme Court.

4. ———: Acquiescence in Suspension: Must Be Pleaded: Abandonment. Acquiescence in a suspension of a certificate-holder for nonpayment of an assessment is such consent by him, to be deduced from implied silence, or absence of objection, as will induce the company to believe he had accepted the view held by it touching his default, and would therefore excuse its subsequent failure to advise him of subsequent assessments. Acquiescence destroys no right. If the facts continue the right in existence, acquiescence does not affect it. Abandonment is entirely different; it may cause the loss of an existing right; it is an affirmative defense, and if not pleaded is waived. There is no conflict in the ruling of the Court of Appeals on these points and the previous decisions of the Supreme Court in Johnson v. Ins. Co., 271 Mo. 1. c. 577.

## Certiorari.

Record quashed.

*I. M. Earle* and *S. C. Rogers* for relator.

(1) The opinion of the Court of Appeals conflicts with the controlling decisions of the Supreme Court, when it holds that, under the evidence in this case, the demurrer was properly refused. Swinhart v. St. Louis & Suburban Ry. Co., 207 Mo. 434; Fulwider v. Gas, Light & Power Co., 216 Mo. 594; Cummings v. Dent, 189 S. W. 1162. (2) The said opinion in affirming the action of the trial court in refusing leave to relator to amend its answer by pleading specifically the limitation provision as shown in the policy, conflicts with the controlling decisions of the Supreme Court. Southern R. E. & Financial Co. v. Bankers Surety Co., 184 S. W. 1030; Sec. 1833, R. S. 1909; Sessinghaus Milling Co. v. Hanebrink, 247 Mo. 219; Feary v. Metrop. St. Railway, 162 Mo. 75; Rodney v. Ry. Co., 127 Mo. 676; Madden v. Mo. Pac. Ry. Co., 192 S. W. 455. (3) The said opinion in holding that it was proper to admit the hearsay admissions of Leonhard, cashier

16     SUPREME COURT OF MISSOURI,

State ex rel. Bankers Life Co. v. Reynolds.

of the Farmer's Bank at Trenton, conflicts with the controlling decisions of the Supreme Court. Atkinson v. School of Osteopathy, 240 Mo. 355; McDermott v. Ry. Co., 73 Mo. 516; State ex rel. Wabash Ry. Co. v. Ellison, 204 S. W. 397; Redmon v. Metrop. Street Railway, 185 Mo. 1. (4) The said opinion in affirming the refusal of the trial court to submit to the jury the question of acquiescence in this case conflicts with the controlling decisions of the Supreme Court. Johnson v. Ins. Co., 197 S. W. 132; Ashbrook v. Phoenix Mutual, 94 Mo. 78.

*Alfred Kehde* and *James J. O'Donohue* for respondents.

(1) Point three of relator's brief reads: "The opinion of the Court of Appeals in holding that it was proper to admit the hearsay admissions of Leonhard, cashier of the Farmer's Bank at Trenton, conflicts with the controlling decisions of the Supreme Court." The opinion of the Court of Appeals does not conflict with the decisions of this court. The first on the list is Atkinson v. School of Osteopathy, 240 Mo. 338. The admissions in that case were those of Dr. Laughlin to the effect that he had stated that the plaintiff's second, third and fourth ribs were broken, caused from Dr. Still's treatments, and did not relate to any admission concerning the acts of Dr. Laughlin himself. In the case of McDermott v. Railway, 73 Mo. 516, the admission was in reference to what defendant's roadmaster said concerning the section foreman's incompetency. It was not the admission of the foreman himself. The case of State ex rel. v. Ellison, 204 S. W. 397, scarcely deals with the question here involved. The admission in Redmon v. Railroad, 185 Mo. 1, was an alleged statement of the conductor to the plaintiff after plaintiff had been hurt in explanation of the cause of the sudden stop of the train. (2) The evidence which the Court of Appeals in its opinion holds competent and which the defendant contends is incompetent, reads: "He said that all but the October premium was paid,

and for that reason I couldn't get it. I considered him as a friend." There was no exception taken or saved to the action of the trial court in admitting that evidence. So that neither the trial court nor the St. Louis Court of Appeals should, we think, be convicted of error, since an exception was necessary even to a review of the question. This, of itself, establishes that the opinion of the St. Louis Court of Appeals is not out of accord with the decisions of this court cited by relator. (3) And, in any event, what Leonhard said was competent. The nature and character of his business for relator was that of collector. And he was the only one who could of his own knowledge make any statement as to the fact of payment or non-payment. To the people of Trenton, Leohard was justly regarded as the representative of the company with complete power touching the performance of the duties which he constantly exercised in their presence. In this view, the admissions of Leonhard were made concerning acts which he had power to perform and were entirely within the scope of his agency and in fulfillment of his office. Hence, his acts were those of the company. (4) Besides, Leonhard's admissions were harmless, since plaintiff had already proven payment of the April, 1913, intallment. Moreover, plaintiff was entitled to a peremptory instruction.

FARIS, J.—This is an original proceeding in *certiorari*, whereby it is sought to quash the judgment of the St. Louis Court of Appeals, in a cause lately pending in that court, wherein Emma A. Rasch was respondent and the relator herein was appellant. This case will be referred to hereinafter, for brevity, as the Rasch case. Upon a hearing had in the Court of Appeals, the Rasch case was in all things affirmed. After an unsuccessful motion for a rehearing, the relator, who was the appellant therein, sued out its writ of *certiorari*.

The facts in the Rasch case, in so far as they are disclosed by the opinion of the Court of Appeals and in

277 Mo.—2

so far as those facts are involved here, run briefly thus: One August F. Rasch, the husband of said Emma A. Rasch, and a citizen at all times of Illinois, became on the 27th day of October, 1911, a member of relator company, which is an assessment life insurance corporation organized under the laws of Iowa. On the latter date there was issued to Rasch, the assured, a certificate of membership for the sum of two thousand dollars, in which certificate said Emma A. Rasch, as wife of assured, was the beneficiary. The premiums, or assessments as they were called in the scheme of insurance here discussed, were payable quarterly, with one month's grace. When the assessment of April 1, 1913, fell due, a letter, or notice was sent by the relator to the assured advising him of the fact, and of the amount of such assessment. This notice contained among other things this statement: "This sum is due April 1, 1913 and payable only to this Company at its Home Office, or to a Despository Bank. One month's grace is allowed so that payment may be made on or before May 1, 1913. If not made by that date your membership and insurance will thereby cease without action by the Company." This notice also further advised the assured that the assessment then due could be paid at a "depository bank," in which latter event the notice should be stamped "paid" by the banker to whom payment was made and would then constitute a receipt, or voucher, for the payment.

Assured, theretofore residing at Trenton, Illinois, removed thence to East St. Louis in March, 1913, prior to the making of the April, 1913, assessment, and thereafter on October 18, 1913, died. The certificate of membership provided that any failure to pay an assessment when due, or after the expiration of the month of grace, should forfeit the membership of the defaulting member, and the certificate of membership should thereupon, *ipso facto,* lapse absolutely.

Upon the trial the sole issue was whether the assessment due April 1, 1913, and payable not later than on, or before, May 1, 1913, had been in fact paid.

Since assured died in October, 1913, prior to the expiration of the month of grace allowed within which to make payment, the October, 1913, assessment never became payable by him, and as to it therefore he never became in default.

All of the evidence which came in tended either to prove or disprove payment of the April, 1913, assessment, and matters apposite thereto. It was shown that the Farmer's Bank of Trenton, Illinois, was a "depository bank" within the meaning of the notice above quoted, and that one Leonhard was the cashier thereof when the April assessment became payable.

Upon a trial by a jury, verdict went for plaintiff for the full amount of the certificate with interest. Whereupon relator appealed to the St. Louis Court of Appeals, and being cast upon its appeal, brought this proceeding to review the judgment of that court.

Other facts sufficient to make clear and to eke out this brief, thumb-nail sketch will be found in our opinion. Should these prove insufficient to an understanding of the facts of the Rasch case and of the questions we find it necessary to discuss, the curious may read these facts at large in the reported case. [Rasch v. Bankers' Life Co., 201 S. W. 919.]

I. The first point of alleged conflict urged upon us by relator is that the holding by the learned Court of Appeals that the demurrer to the evidence offered *nisi* was properly overruled, contravenes the

**Burden of Proof.** rule announced in the case of Swinhart v. Railway, 207 Mo. l. c. 434; Fulwider v. Gas, L. & P. Co., 216 Mo. l. c. 594, and the case of Cummings v. Dent, 189 S. W. l. c. 1162. Specifically the point urged is that the demurrer ought to have been sustained *nisi*, because the plaintiff did not prove the payment of all premiums or assessments falling due up to the date of the assured's death.

Upon this point the Court of Appeals (201 S. W. l. c. 923), said:

"The defendant's answer, however, having admitted the issuance of the certificate or policy of insurance upon the life of August F. Rasch, and that the plaintiff was the designated beneficiary in said policy, and further admitting the death of the insured, and that demand had been made upon it for payment, and admitting that payment had been refused, it was necessary for the plaintiff merely to introduce the policy of insurance in evidence, which it did in the instant case, and she thereby made a prima-facie case. The burden of showing whether any installments were unpaid at the death of the insured under this state of facts rested upon the defendant. [Bange v. Supreme Council Legion of Honor, 179 Mo. App. 21, 161 S. W. 652; Gooden v. Modern Woodmen of America, 194 Mo. App. 666, 189 S. W. 394; Harris v. Security Life Ins. Co., 248 Mo. 304, l. c. 318, 154 S. W. 68.]"

The case of Harris v. Security Life Ins. Co., 248 Mo. l. c. 318, cited by the learned Court of Appeals, if not the very latest pronouncement by us upon this question, is at least entirely apposite upon the identical point of alleged conflict; nor can we find that we have ever receded from it. In the Harris case at the page cited this court said this:

"Appellant insists that it was incumbent on the insured to make proof of the full payment of all premiums on the policy at the time of the death of the insured. Whether the premiums had been received or not was a matter peculiarly within the knowledge of appellant. It, however, neither pleaded nor proved nonpayment; although, if that were the fact, the policy would have been relieved of the preclusion of the clause making it incontestable after one year, and it would have been open to any legitimate defenses, such as false warranties or fraudulent representations. The record contains no positive proof of the payment of the second premium. The payment of the first premium is admitted.

"Under these circumstances, the production of the policy, together with proof and due notice of the death

of the insured, made a prima-facie case for respondent, and cast upon the defendant the burden of showing whether any premium was unpaid at the death of the insured. [25 Cyc. 925, 927; Provident Sav. Life Assur. Society v. Cannon, 201 Ill. 250; Ins. Co. v. March, 118 Ill. App. 261; Crenshaw v. Ins. Co., 71 Mo. App. l. c. 52.]''

It is patent from a reading of the cases urged by relator as being in conflict with what the Court of Appeals said upon the above point, that these cases but announce the general rule to which the rule in an action upon a contract of life insurance is an exception. Indeed, this exception is noted in the case of Swinhart, v. Railroad, supra. It follows that this averment of conflict must be disallowed.

II.   During the trial, and as we gather from the opinion of the learned Court of Appeals, *after all of the evidence was in,* the defendant asked leave to amend its answer setting up for the first time the new defense of the Statute of Limitations.   This proposed amendment the trial court refused to permit.   The Court of Appeals ruled that this refusal was not error.   Relator insists that the right to make the sort of amendment requested at the stage of the trial stated has been decided in the affirmative by us.

Amendments are largely, but not entirely, within the discretion of the trial court. [Joyce v. Growney, 154 Mo. 253.]   This discretion will not be interfered with unless it is obvious that there has been an abuse thereof by the Court *nisi.*   [Carr v. Moss, 87 Mo. 447.]   Both by statute (Sec. 1848, R. S. 1909) and by the construction put on that statute by this court, amendments of the pleadings are to be liberally allowed, but only upon condition that such amendments shall result in no substantial change in the defense made necessary or of the cause of action.   [Carter v. Dilley, 167 Mo. 564; Southern etc. Co. v. Surety Co., 184 S. W. 1030; Joyce v. Growney, 154 Mo. 253.]

*Margin note beside paragraph II:* Amending Answer.

22    SUPREME COURT OF MISSOURI,

State ex rel. Bankers Life Co. v. Reynolds.

Defendant based its right to amend upon the ground that it did not discover the facts upon which the proffered defense of the Statute of Limitations was bottomed till about the time the request to amend was made.

The learned Court of Appeals held in effect, however, that upon the facts in the case the defendant was not diligent in ascertaining the particular fact upon which it bottomed its proffered amendment; that inasmuch as a plea of the Statute of Limitations is waivable it could raise such plea in defense, or not as it chose, but that such defense was here an affirmative one and must be pleaded. Under these facts the Court of Appeals held that the trial court ought not to be convicted of error in exercising its discretion.. That a discretion, we repeat, exists in the trial court under the provisions of Section 1848, supra, and that an exercise of this discretion by a refusal to permit amendment will not be held error in a case wherein the amendment substantially changes the defense, is well-settled. The cases urged by relator as being in conflict with what was ruled by the Court of Appeals, so far as they are at all apposite, hold this, and no more. The amendment requested was of such character as ordinarily to constitute a substantial change in the defense. We conclude that the view taken by the Court of Appeals was correct.

III. Upon the trial below both the plaintiff in the Rasch case and a witness produced by the plaintiff were permitted to testify as to the verbal statements made to them by one Leonhard who

Statement of Agent. was the cashier of the Farmers' Bank of Trenton, Illinois, whereat as a "depository bank" relator allowed payments of premiums or assessments to be made by its certificate-holders. These statements were made some time subsequent to the death of the assured, and at a time when the plaintiff in the Rasch case was investigating the situation with a view to bringing this suit upon the certificate. The

Court of Appeals, discussing the assignment of error bottomed upon the admission of the statements of Leonhard, said:

"We find no error in the action of the court in permitting plaintiff in rebuttal to testify that Leonhard, cashier for the Farmer's Bank at Trenton, Illinois, had stated to plaintiff a few days after the death of the insured, that all assessments on the certificate in question had been paid with the exception of the October, 1913, assessment. This testimony was clearly competent in view of the fact that it was admitted by defendant that the said Farmers' Bank was a regular depository bank duly authorized to receive payments of assessments from the several members of the defendant association who held certificates of insurance therein, and, further the witness had already testified to the fact that prior assessments on the certificate in question had been paid to said Leonhard at that bank."

Relator strenuously contends that this ruling is in conflict with the cases of Atkinson v. School, 240 Mo. l. c. 355, and McDermott v. Railroad, 73 Mo. l. c. 519, and other cases decided by us. We think this contention must be sustained. We have had occasion to state this rule repeatedly. [Redmon v. Railroad, 185 Mo. l. c. 11; Ruschenberg v. Railroad, 161 Mo. l. c. 80; Barker v. Railroad, 126 Mo. 143, and other cases.] In a case wherein, as here, the doctrine of admissibility was strongly contended for, on the ground that the conductor who made the statements was the general agent of the defendant (Redmon v. Railroad, supra), GANTT, J., rejecting this theory and writing the rule long before that case and ever since followed by us, said:

"It is, however, urged that manifest error was committed in admitting, over defendant's objection and exception, the statement of the conductor to the plaintiff after plaintiff had been hurt in explanation of the cause of the sudden stop of the train.

"Plaintiff urges it was admissible on two grounds: first, because made by the conductor, the agent of the defendant in charge of the train, to an injured passenger who had the right to make the inquiry; second, because it was a part of the res gestae. Considering the second proposition first, it may be said that the courts do not differ materially as to what the doctrine of res gestae is, but they are hopelessly variant in its application.

"The res gestae may be defined as those circumstances which are the automatic and undisguised incidents of a particular litigated act and which are admissible when illustrative' of such act, indeed must be in contemplation of law a part of the act itself. Narratives unconnected with the principal facts are universally rejected. Applying this general rule, a statement by a motorman after a child had been run over by his car and while the car was still standing in the street was rejected in Ruschenberg v. Railroad, 161 Mo. l. c. 79, 80, following Barker v. Railroad, 126 Mo. 143, and Adams v. Railroad, 74 Mo. 553.

"If those cases are to be followed, and we think they should be, the admission of the statement of the conductor can not be sustained as a part of the res gestae. On its face it is a narrative of what had happened and the cause thereof and elicited by a question as to the cause of the trouble.

"Was it admissible on the ground that the conductor was the agent and representative of the company and made the statement by authority and to a passenger who had the right to demand the cause of his injury?

"This must be solved by the application of the law of principal and agent. The admission or declaration of his agent binds the principal only when it is made during the continuance of the agency in regard to the transaction then depending. This must be regarded as settled law in this State. [Rogers v. McCune, 19 Mo. 557; McDermott v. Railroad, 73 Mo. 516; Adams v. Railroad, 74 Mo. l. c. 555-6; Aldridge

v. Furnace Co., 78 Mo. l. c. 563; Devlin v. Railroad, 87 Mo. 545; Barker v. Railroad, 126 Mo. l. c. 148.]''

On the authority of the cases called to our attention by relator, as well as many others ruled by us, we think that the recital by plaintiff and her witness in the Rasch case, of what Leonhard, the cashier, said about the payments made to the bank of which he was cashier, was under the circumstances erroneous and that what is said by the learned Court of Appeals touching the admissibility of these statements is in conflict with our last previous ruling upon the point.

IV.   Lastly it is contended that the following clause in the opinion of the Court of Appeals, to-wit:

''And the facts in this case fail to prove acquiescence even when viewed in the light of the rule that

**Acquiscence.** whenever there is a void expulsion or suspension the expelled or suspended member is under a duty to affirm or disaffirm the act of expulsion or suspension within a reasonable time.   Furthermore, abandonment is an affirmative defense and no such defense is set up in the answer.   Defendant thereby waived same by not pleading it. [Keeton v. National Union, 182 S. W. (Mo. App.) 798.]'' is in conflict with this language in the case of Johnson v. Ins. Co., 271 Mo. l. c. 577, to-wit:

''It is further contended by appellant that the judgment must be reversed because there was an abandonment by the assured of the policy contract.

''In approaching a consideration of this point it must be borne in mind that the sole function of this court, in this, a case at law, is to pass upon matters of error properly raised in the trial court and passed upon by that court.

''We are unable to see wherein this point was presented or passed upon below.   It appears that an abandonment was not even pleaded by appellant. 'Abandonment of a contract of insurance is an affirmative defense which is waived if not pleaded.' [Bacon on Life and Accident Insurance (4 Ed.), sec. 364, p.

76C.]    . . . Abandonment presupposes an existing valid right which is to be abandoned. Acquiescence in a forfeiture (a cancellation of a right) is quite a different thing from abandoning an existing right. In the former the loss of the right, if any, occurs by reason of the forfeiture, while in the latter the loss of the right occurs by voluntarily and intentionally surrendering an existing right. An abandonment might give cause for forfeiture, but a forfeiture can supply no basis for an abandonment, because when once forfeited the right does not remain to be abandoned.''

We are wholly unable to see the pertinency of this contention. If we understand what is meant by acquiescence in a suspension of a certificate-holder for non-payment of an assessment due, it is such consent of the assured, to be deduced or implied from silence, or absence of objection, as would induce the company or society to believe that the certificate-holder had accepted the view held by the society touching the effect of his default, and which would therefore excuse the subsequent failure of the society to advise the assured of the levy of subsequent assessments. Acquiescence destroys no right. If the facts continue the right in existence, acquiescence does not affect it; while abandonment may cause the loss of an existing right. Moreover, we are unable to see any field for the application of the so-called doctrine of acquiescence to the facts and *issues in the Rasch case.* We are utterly unable to see any substantial conflict between what the Court of Appeals said upon this point and what we said in the Johnson case.

For failure to follow the last previous ruling of this court upon the point of the admissibility of the statements of an agent made under the circumstances detailed, the record of the St. Louis Court of Appeals will be quashed and the cause remanded to that court for such further proceedings as are not inconsistent with what we have herein ruled. Let this be done.

*Blair, Williams, Woodson* and *Graves, JJ.,* concur; *Bond,ˋ C. J.,* dissents in separate opinion, in which *Walker, J.,* concurs.

BOND, C. J. (dissenting).—I am constrained to dissent from Paragraph III and the resultˋ of the opinion of my learned brother FARIS. The other paragraphs of the opinion are demonstratively clear and correct. I am, however, unable to concur in his views of the application of the law relating to the effect of admissions or declarations by the agent as againsṫ his principal on the facts shown by this record. These, as I gather them, are that the defendant insurance company is a non-resident of the State of Illinois and the bank, represented by its cashieṙ, was, to all intents and purposeš, the insurance company itself in šo far as concerned its dealings with policy-holders and the payment of premiums by themˊin that State; and to this end that such bank, and its cashier, were clothed by the insurance company with *plenary* power to collect and receive any and all premiums payable to it by its policy-holders. As I understand the facts, plaintiff applied to said cashier of said bank for ·the purpose of learning what payments of premiums were still due on the policy in suit. I think his admissions in that respect were strictly within the scope of his continuing agency to collect and receive the premiums due his principal; for he could not perform that duty ·without stating what premiums were still due after extending former payments. His testimony, therefore, related strictly to the performance of the duties entrusted to the bank as the general agent and *alter ego* of the non-resident insurance company; indeed, as its sole representative in the State of Illinois. [Laundry Co. v. Ins. Co., 151 Mo. 90; Nickell v. Ins. Co., 144 Mo. 420; Blass v. Ins. Co., 202 S. W. l. c. 271; Brink v. Ins. Co., 49 Vt. 442; Hall v. Ins. Co., 23 Wash. 610.] In these circumstances I think his admissions and declarations had the same evidentiary force as if they

28 · SUPREME COURT OF MISSOURI,

State ex inf. McGinnis v. School Dist. No. 3.

had been made by his principal and, therefore, that there was no error in admitting them in evidence and hence there was no conflict between the ruling of the St. Louis Court of Appeals on that point and the previous rulings of this court cited in the application made by relator. *Walker, J.,* joins in this opinion.