Donald **BOLING** and Aetna Casualty and
Surety Company, Respondents,

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY** and Paul Hunt,
d/b/a Hunt Materials, Inc., Appellants.

No. 55646.

Supreme Court of Missouri,
Division No. 2.

May 10, 1971.

F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for respondents.

Paul E. Fitzsimmons, Clayton, for appellant State Farm Mut. Auto. Ins. Co.

PRITCHARD, Commissioner.

This is a declaratory judgment action by which Aetna Casualty and Surety Company asked that its automobile liability policy issued to Donald Boling be declared excess coverage to a similar policy issued by State Farm to Paul Hunt, d/b/a Hunt Materials Company. The occurrence which gave rise to the dispute between the two companies was an automobile accident in which Boling, the driver, with Hunt as a passenger in the right front seat, ran off the shoulder of the Foristel, Missouri, exit to Interstate 70, lost control of the car which then turned over and injured Hunt. Hunt filed suit against Boling in the Circuit Court of St. Charles County, Missouri, and State Farm refused to defend Boling therein or indemnify him for any judgment obtained by Hunt. The basis of the refusal was and is that Hunt was a named insured in the policy and was excluded from bodily injury recovery by reason of this exclusion: "This insurance does not apply under: * * * (i) coverage A, to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured; * * *."

The resolution of the issue requires a consideration of whether the policy was, under the facts, issued to Hunt individually or to the corporation, Hunt Materials, Inc., of which Hunt was president and general manager.

Donald L. Boling was an employee of Hunt Concrete Company which was a partnership in which Paul Hunt had an interest. Hunt also had an interest in Hunt Materials, Inc.; Louisiana Concrete Company, Incorporated; Pittsfield Concrete, Incorporated; and several different businesses. Hunt Materials operated basically out of Montgomery City, Missouri, as a ready-mix plant, and had offices in Warrenton, from which all billing was done by Boling. Boling, however, was on the payroll only of Hunt Concrete and Louisiana Concrete. When the accident occurred he and Hunt were on the way home from a St. Louis Cardinal ball game. Boling then lived at Warrenton and Hunt at Wright City, about six miles away. Boling was driving the 1966 Buick Wildcat, which was titled "Hunt Materials" with the signature of the owner thereon, "Hunt Materials, Paul Hunt, Pres." The Wildcat was paid for by Hunt Materials through a loan from Mound City Trust Company to which payments were made by that corporation.

On the day of the accident, July 18, 1967, Boling and Hunt were in St. Louis to purchase parts for a conveyor at the Warrenton plant. They then went to the Missouri State Bank and Trust Company where Hunt talked with the officers about investing in the bank through the means of a holding company. Then Hunt called Jack Regal about $44,000.00 owed to Hunt, and talked to him at a restaurant where Boling and Hunt had dinner. Thereafter they all walked over to the ball game. The 1966 Wildcat was used by Paul Hunt as his personal and business car.

The retail order for the Buick of Phil Beck Motors, Inc. had Hunt Materials as purchaser, the signature of the purchaser being "Hunt Materials Paul Hunt Pres." On the same date Hunt Materials, Inc. issued its check, signed by Paul Hunt, to Phil Beck for $645.00. The corporation owned the Buick and Hunt had no ownership interest in it individually.

The automobile application to F. W. Werges, State Farm's agent, was made out: "Hunt, Paul d/b/a Hunt Materials, Inc.", Warrenton, Missouri. The occupation or business was stated, "Manager of Business"; the employer was "Self." Under "Drivers" the owner was stated to be Paul Hunt who signed under "Applicant's Signature." The chattel mortgage to the Mound City Trust Company on the Buick showed the mortgagor to be "Paul Hunt, DBA Hunt Materials" and was signed by Paul Hunt. Hunt received $3,100.00 from State Farm

for medical expenses and signed a release made out in the name of "Paul Hunt DBA Hunt Materials," "Hunt Materials Inc. Paul Hunt." Checks issued by it were to Paul Hunt for $2,000.00; to Paul Hunt DBA Hunt Materials, Inc. and *Mound City Trust Company* for $1,833.01; to Paul Hunt DBA Hunt Materials, Inc. for $1,266.99; and to Collector of Revenue, "Credit State Road Fund for acct. of Hunt Materials, Inc.", for $16.35 (for a road sign destroyed in the accident). The premiums on the policy were paid by checks of Hunt Materials, Inc., and were signed by Paul Hunt.

Werges handled the financing on the car and prepared the application for insurance and the chattel mortgage. The choice of the terminology "Paul Hunt, d/b/a Hunt Materials Inc." was something that Werges put down, and the forms were signed in his office. Werges saw the purchase order for the Buick He testified that Hunt told him he wanted the name "Paul Hunt D/B/A Hunt Materials Company" on the policy for tax purposes, but he did not make a statement that "he wanted this to be insured as a corporate vehicle and not in his individual name." On deposition Werges had testified that as to phraseology of the insured's name, "A. This is generalities again. Usually when a car is in the business name or something, we have to show the insured's name and then show the business name. Q. Is there some sort of rule on that? A. It is just the way I have always done it. I presume it is correct. That is the way I have been instructed to do it." On cross-examination Werges testified: "Q. At that time didn't you tell us you did it that way because that is the way you always did it? A. That is the way I do it in this business, yes, sir. Q. It wasn't something Mr. Hunt suggested to you or told you to do, was it? A. Mr. Hunt didn't tell me, I put it down there. * * * MR. O'LEARY: He told you it was a company car? [Objection] A. He wanted it in that name because he thought it would be a tax advantage. Q. When you say he wanted it in that name, what are you referring to, what name?

A. In the Hunt Materials' name. Q. Inc.? A. That name, yes, sir. Q. You added the Paul Hunt, d/b/a part of it, didn't you? A. Because Paul was the one I was insuring. Q. But the selection of the entire phrase, Paul Hunt, d/b/a Hunt Materials, Inc., was something you came up with, not that he told you to do it this way or that way, isn't that true, Mr. Werges? A. That is true, yes, sir." Werges knew that Hunt Materials, Inc. was located in Warrenton and that Hunt did not live there.

Mary Sue Toedebusch was employed by Werges as a secretary. The application for the State Farm policy was in her handwriting, but she could not remember if Hunt came in and talked to her or to Werges. It is possible that she prepared the application on the basis of an application for financing on the car; and it is possible that the application was in her handwriting even though Werges talked to Hunt. Mary Sue was sure that she typed up the chattel mortgage application because she did all of them.

State Farm's underwriting superintendent, Orrin Lashbrook, construed the application for insurance to mean that it was intended to insure the individual, Paul Hunt. It's agent's service manual is: "A. If the applicant is a corporation, use the corporate name exactly as it appears in the charter of the corporation, usually found on letterheads or heading of a statement, and so forth. Do not use the name of the officer of the corporation."

■ It is obvious that the "Named Insured" in the policy is uncertain or ambiguous, i. e., was the policy issued to Paul Hunt individually or to Hunt Materials, Inc., Warrenton, Missouri? The parties in effect treat this insuring clause as being uncertain or ambiguous and each relies on extrinsic evidence to demonstrate their positions of coverage and noncoverage. Since the language used is uncertain the well-established rule applies that it will be construed against the insurer. *Powell v. Home Indemnity Company* (C.A. 8th), 343 F.2d

856; Aetna Casualty & Surety Company v. Haas, Mo., 422 S.W.2d 316.

State Farm urges that the trial court's findings of fact are contrary to the weight of the evidence and its rulings are clearly erroneous. It says that Paul Hunt treated the 1966 Buick as his own personal car; that he admitted it was basically his car and he was the one responsible for it; he never did any business with State Farm other than in connection with his personal vehicles; no company business was ever conducted with State Farm; and "If Paul Hunt seriously considered this a company car, one would expect that he would save on the premium by inserting it in the fleet policy with Home Indemnity Company that covered thirteen business vehicles. This automobile was taken home most nights and was used by Paul Hunt and his wife to go out socially." Taken in connection with the following facts, the inference which could also arise from State Farm's contentions is that the Buick car was furnished to him to be used for company business.

■ Werges conceded that Hunt told him he wanted the policy issued to Hunt Materials, Inc., for tax purposes. Hunt exhibited the retail order for the motor vehicle to Werges. That document showed the purchaser's name to be Hunt Materials, and was signed "Hunt Materials Paul Hunt Pres." Werges knew that Hunt did not live in Warrenton, Missouri, the address on the policy, in which city the corporation had its offices. The evidence showed that the corporation was the owner of the Buick, and Hunt had no ownership in it individually. It was Werges, State Farm's agent, who, as his idea, chose the terminology as to who would be the named insured under the policy. The checks for the policy premiums were issued by Hunt Materials, Inc., payable to State Farm, which fact causes it to be estopped to deny that the corporation was the insured. See Brethren's Mut. Ins. Co. v. Hayes, 83 Ind.App. 327, 147 N.E. 159, 160. It is clear under the evidence that the mistake or neglect in the

policy application was that of State Farm's agent, Werges. Compare Gattavara v. General Ins. Co. of America, 166 Wash. 691, 8 P.2d 421, 423 [3], stating, "In other words, the insurance company could not take advantage of its own mistake and neglect, to the damage of the respondent."

This case was filed in July, 1968. From November, 1968 through March 1969 interrogatories and answers were exchanged, and depositions of parties and witnesses were filed. The case was set for trial April 21, 1969, and was continued to September 8, 1969. Without notice, State Farm on August 13, 1969, was granted leave to amend its pleading to include a defense that Hunt and Boling were fellow employees, coverage for whom would be excluded under Exclusion (g) of the policy. Plaintiffs' motion to strike this amendment was sustained by the trial court on August 29, 1969, which State Farm says was an abuse of discretion resulting in a miscarriage of justice.

■ It is unnecessary to consider the merits of the stricken answer. Although a court should be liberal in permitting amendments to pleadings, Civil Rule 55.53, V.A. M.R., it is not bound to do so. The matter of amendment of pleadings is within the sound discretion of the court. Parsons Construction Co. v. Missouri Public Serv. Co., Mo., 425 S.W.2d 166. The amendment requested presented an additional defense within a month prior to the time the case was set for trial. The facts upon which the amended answer was based were or should have been known to State Farm at the time discovery was completed, about six months prior to trial. It delayed in seeking the amendment, and if permitted would have required plaintiffs to meet a new defense. Under all the circumstances the trial court did not abuse its discretion in striking the amended answer presenting a new defense. State ex rel. Bankers' Life Co. of Des Moines, Iowa v. Reynolds, 277 Mo. 14, 208 S.W. 618, 620 [4].

The trial court's findings and conclusions of law are not manifestly erroneous, Civil

Rule 73.01(d), V.A.M.R., and, accordingly, the judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.