## EMILY GOODEN, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

### Kansas City Court of Appeals, November 6, 1916.

1. **FRATERNAL BENEFICIARY ASSOCIATIONS: Life Insurance: Suit on Fraternal Benefit Certificate: Prima-facie Case: Demurrer to Evidence: Sufficiency.** In a suit on a fraternal benefit certificate, the defendant's admission of the issuance of the certificate and plaintiff's proof of the death of the member and that she was the beneficiary, made out a prima-facie case; and before the trial court can be convicted of error in overruling defendant's demurrer to the evidence, the record must show that either a suspension of the member or an abandonment of the insurance was established so conclusively as to take away from the jury any right to make a contrary finding.

2. ————: ————: ————: ————: **Burden of Proof: Question for Court: Question for Jury.** When a prima-facie case is made by plaintiff in a suit on a benefit certificate, the burden is on the defendant to establish, to the satisfaction of the jury, an affirmative defense. And though the evidence in support of that defense is uncontradicted, the issue must be submitted to the jury to determine the credibility of the evidence. This presupposes that the evidence is of such character as to present a question of credibility for the jury to pass upon. If plaintiff admits that defendant's evidence is true, or if the evidence is such that plaintiff is conclusively bound by it, then there is no question for the jury but only one of law for the court. But in this case the authenticity of a letter, alleged to have been written by deceased abandoning the insurance, was not established so conclusively as to overcome, as a matter of law, plaintiff's prima-facie case.

3. ————: ————: **Appeal and Error: Presumptions: Evidence Omitted from Record.** Where the validity of the judgment is attacked upon the ground of the insufficiency of the evidence, or because the evidence contains no issuable determinative fact to be submitted to the jury, an appellate court will not convict the trial court of error where the entire evidence is not presented in the abstract.

4. ————: ————: ————: **Abstract of Record: Omissions.** The statement of one of the parties litigant that everything shown by the records introduced in evidence was abstracted cannot be accepted in opposition to the abstract of the record itself which shows on its face that some of the records introduced in evidence were not abstracted.

5. ————: ————: ————: ————: ————: **Correction.** It is not incumbent upon the one who has recovered the judgment to maintain it. The burden of showing its invalidity is on the one attacking the judgment. Hence it was not incumbent upon the respondent to supply the omitted portion by an additional abstract. The fact that a part was omitted already appeared on the face of the record and the disclosure of what the omitted portion contained was not necessary to the maintenance of the judgment.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

AFFIRMED.

*Truman Plantz, F. M. McDavid* and *W. C. Woodson* for appellant.

*Weatherby & Frank* and *Campbell & Ellison* for respondent.

TRIMBLE, J.—In 1898 the defendant issued to William Gooden a benefit certificate of insurance for $1000 payable at his death, if in good standing, to his mother Emily Gooden. He died April 16, 1914. Defendant refused to pay and plaintiff brought this suit. She recovered judgment in the trial court.

The defense is, first, that Gooden was suspended for nonpayment of assessments for the months of January, February and March, 1914, and non-payment of dues payable March 31, 1914; second, that Gooden had abandoned the policy as evidenced by a letter which defendant claims Gooden wrote to it in December, 1913.

The existence of the benefit certificate and the membership of Gooden (barring the alleged suspension and abandonment), having been admitted, the plaintiff proved his death and that she was the beneficiary, and rested. The defendant then undertook the burden of proving the suspension and the abandonment. At the conclusion of the evidence, defendant asked a peremptory instruction directing the jury to return a verdict for it, which was refused. All other instructions asked by defendant were given and there is no objection to the one instruction

given for plaintiff; nor is any point made on the admission or exclusion of evidence. Consequently the refusal of the peremptory instruction to find for defendant is the only matter of which it complains.

Of course, before the trial court can be convicted of error in this regard the record must show that either a suspension or an abandonment was established so conclusively as to take away from the jury any right to make a contrary finding. The admission that defendant had issued the benefit certificate to Gooden and that he was a member of the Order, coupled with plaintiff's proof that he was dead and that she was the beneficiary, made out a prima facie case for plaintiff. [Bange v. Supreme Council Legion of Honor, 179 Mo. App. 21.] When that is done, the burden is on the defendant to establish an affirmative defense to the satisfaction of the jury. And even though the evidence in support of such defense is uncontradicted, still the issue must be submitted to the jury in order that they may determine the credibility of that evidence. The court in such case cannot direct a verdict. [Winn v. Modern Woodmen, 157 Mo. App. 1; Troll v. Protected Home Circle, 161 Mo. App. 719; Printz v. Miller, 233 Mo. 47, l. c. 49; Milliken v. Thyson Com. Co., 202 Mo. 637, l. c. 655; Hunter v. Wethington, 205 Mo. 284, l. c. 293; Mowry v. Norman, 204 Mo. 173, l. c. 191; Wolf, Admx., v. Campbell, 110 Mo. 114; Keily v. Knights of Father Matthew, 179 Mo. App. 608.]

The above statement of the rule presupposes that the evidence is of such character as to present a question of credibility for the jury to pass upon. If plaintiff admits that defendant's evidence is true, or if the evidence is such that plaintiff is conclusively bound by it, then there is no question for the jury but only one of law for the court. A careful examination and statement of defendant's evidence and its character is, therefore, necessary in order to determine whether the case comes under the general rule requiring the submission of the issues to the jury or whether it is within one of the exceptions to the rule.

The principal witnesses for the defendant were Connor, the local camp clerk, and McNamara, the Head Clerk, or Secretary, at Rock Island, Illinois, who was assistant Head Clerk at the time the matters testified about transpired. By the clear and explicit terms of the insurance contract, a failure to pay any assessment on or before the last day of the month for which it was levied, or a failure to pay dues by the time required therefor, *ipso facto,* worked a suspension of the member and rendered the policy null and void. So that if it were established that deceased had failed to pay the assessment for either January, February or March, 1914, or to pay the dues payable on or before March 31, 1914, the certificate was void and plaintiff must fail.

To prove this non-payment of assessments and dues, the defendant introduced the "pass report" of the local camp sent to the office of the Head Clerk in February, 1914. This pass report was signed by the presiding officer and clerk of the local camp, and showed the name of William Gooden as having failed to pay the assessment for January, 1914, known as assessment 294, and as being suspended for that reason. The pass report of the local camp for assessment 295, levied for February, 1914, was next introduced showing no payment by William Gooden of said assessment nor did his name appear among those reinstated. No reference whatever is made to him therein. Likewise pass report of the local camp for the month of March, 1914, was introduced showing no payment of assessment for that month. These pass reports were identified by McNamara, the Head Clerk, as having been received through the mail from the local camp in the regular course of business. No objection was made to the introduction of these pass reports.

The defendant also introduced as exhibit 6, a book, identified by Connor as the "Ledger Account" of the local camp, with especial reference to pages 78 and 79, showing William Gooden's account with the local camp wherein he had paid twenty-four assessments of 50 cents each, being assessment No. 270 levied January,

1912, to and including assessment No. 293 levied December, 1913, but no payment of assessment after that time or after assessment No. 293. Connor testified, ''that is the last assessment reported there.'' He also testified that the last payment of dues by Gooden were those payable on or before December 31, 1913. McNamara, the Head Clerk, testified that no assessments on account of William Gooden were received since December, 1913.

The Head Clerk further identified Exhibit J, which he termed was a ''permanent record of his office'' which record stated that a notice of suspension was mailed to William Gooden February 28, 1914. McNamara then testified that ''under the rules of the office'' a letter accompanied the notice of suspension and offered copies of two circular letters from the Head Office to William Gooden urging him to reinstate himself by payment of his assessments and dues, if in good health. The copies of these circulars were not dated, but McNamara testified that the original of the first was sent out under date of February 28, 1914, and the second under date of March 29, 1914. He then produced what purported to be a letter signed by William Gooden dated April 2, 1914, which, among other things, said: ''I have dropped the Woodmen voluntarily with the advice of my beneficiary. I gave the Camp Clerk notice to that effect in January.'' The letter, after saying: ''It is useless for me to go into detail and give my reasons why;'' nevertheless proceeded to state several matters as a reason for his action and closed by saying he admitted their success ''by dropping my policy in the Woodman. Very sincerely yours. Wm. Gooden Camp 2147.''

Under the terms of the insurance contract, suspension for non-payment, rendering the policy void, was not effected or waived by giving or failing to give notice. The offering in evidence of the alleged notices and of the letter purporting to be from insured was for the double purpose of showing that Gooden impliedly admitted non-payment and that he had abandoned the policy, the notices being shown in evidence, merely as a means of identifying the letter as having been writ-

ten by insured in answer to them. If there could be no question as to the authenticity of this letter and as to its having been received in answer to notices sent to Gooden it would seem that defendant had conclusively established its defense, and that there was nothing for the jury to decide. For if the letter is genuine, it shows a clear and unequivocal abandonment of the policy or certificate. But McNamara admitted on cross-examination that he knew nothing personally about any notices having been sent to Gooden or of any letter having been received from him. All he knew about notices having been sent was based on the custom of the office and its mode of doing business. The knowledge he had was obtained from the books in the office. No evidence was given of any letters having been properly directed and stamped or mailed to Gooden, and none that any letter from him was received through the mails. All that the witness knew of the letter purporting to be from Gooden was that it was in the files of defendant's office, he never having seen it until after this controversy arose. No evidence was offered to prove the signature to the letter as being Gooden's. The letter says that the local camp clerk had been notified in January yet no question was asked of the clerk to corroborate this. In such state of the record it cannot be maintained that the authenticity of the letter was established, and the abandonment proved, so conclusively as to overcome, as a matter of law, plaintiff's prima-facie case. It was a question for the jury to say whether defendant ever received a letter from Gooden and whether the letter submitted as his was genuine. It is said that no objection was made to the introduction of the letter, but this was not an admission of its genuineness. Defendant had offered evidence tending to show that letters had been sent to Gooden urging him to reinstate and then had introduced the purported Gooden letter, found in the files, as a letter received from him in answer to those. This was *some* evidence sufficient to authorize the introduction of the letter in evidence to the jury. They could then weigh the

evidence of authenticity for whatever it was worth. There being some evidence authorizing its admission, an objection to the introduction of the letter, had it been made, would have had to be overruled. Plaintiff was not required to make a useless objection. She did not admit the letter to be genuine and her failure to make an objection that must of necessity have been overruled cannot be accepted as an admission that the letter was from Gooden. It was still incumbent upon defendant to show that the letter was genuine or to prove facts raising the presumption that it came from Gooden. The testimony in support of the copies of the notice and circulars to Gooden and of the finding in the files of the letter said to have come from him, rest entirely upon the oral testimony of the Head Clerk, and his knowledge of them is derived solely from notations made on these instruments coupled with his knowledge of the manner business is ordinarily carried on by his office. At the same time he cannot say who made these notations nor when they were put there, nor how the circular copies or the letter came into the files or when or who put them there. Under these circumstances the question whether the letter was authentic or not was for the jury.

We now take up the question of whether a failure to pay assessments was conclusively shown or not. As stated, defendant's evidence in this regard was the pass reports sent to the Head office by the officers of the local camp, the oral evidence of the Head Clerk that no assessments had been received from Gooden since December, 1913, and defendant's exhibit 6, being a book kept by the local camp wherein it appeared that Gooden had not paid any assessment after December, 1913.

After these were introduced, the plaintiff, in cross-examination of defendant's witnesses, established the fact that up to the year 1912, the Head Camp had advised its members to pay as much as a year in advance and that a number of members had done so and the local camp had sent them in to the Head Camp. Thereupon the plaintiff, in cross-examination of Connor, the

local camp clerk, identified four books which the latter
had produced at the trial and which the record shows
were marked defendant's Exhibits 3, 4, 5, and 6, as
containing the record of the payments made by the mem-
bers of the local camp, beginning January 1, 1901.
Plaintiff then offered the four books in evidence. The
last named book, Exhibit 6, is the same book and exhibit
that defendant offered *showing that no assessment had
been paid by Gooden since December* 1913. Consequently,
defendant says that plaintiff having identified the *same*
record book as a record kept by the local camp and
having introduced it in evidence, thereby vouched for,
and joined with defendant in asserting, its credibility,
accuracy and correctness. In other words, the record
book, Exhibit 6, is a record *agreed upon by both parties,*
has been identified as showing the facts, and for this
reason must be accepted as conclusively binding on
both, and this record shows the *failure of Gooden to
pay any assessments after December* 1913. For this
reason, defendant says the failure of Gooden to pay
the assessments of January, 1914, and thereafter was
conclusively established, leaving no question for the
jury to pass upon. Moreover it claims that the course
pursued by plaintiff in the trial, and the position taken
by her in her brief, is an admission that defendant had
established that Gooden did not pay said assessments.
Because the evident purpose of plaintiff's cross-examina-
tion as to payments in advance and the introduction
of the books showing payments from January 1, 1901,
to and including December, 1913, was to show that by
advance payments made in those years by Gooden, he
had *overpaid* and consequently did not owe and was not
in arrears for the assessments of January, 1914, and
thereafter. That this was plaintiff's purpose is fully
borne out by plaintiff's position taken in her brief. And
if the foregoing were all that is in this case, we would
hold that the above circumstances take the case out of
the operation of the general rule hereinabove stated as
to the procedure where plaintiff has made a prima-facie
case. For, even if defendant's evidence was not that

194 M. A. 43

character of record evidence which would conclude plaintiff, because made by one party only, yet when plaintiff introduced the *same* record, and thereby vouched for its truth and correctness, she became bound thereby as to all issuable facts which such record unqualifiedly disclosed. If such record thus agreed upon by the parties, showed that the assessments of January, 1914, and thereafter, or any one of them, were not paid, then there remained no room for reasonable controversy, and there was nothing for the jury to settle. In that event the court should have given defendant's peremptory instruction. [Richey v. Modern Woodman of the World, 163 Mo. App. 235; Darlington Lumber Co. v. Missouri Pacific Ry. Co., 243 Mo. 224.]

But did the records in evidence show that any assessment or dues were due and unpaid? And this brings us to another phase of the case. The plaintiff, after showing that members had been invited to pay in advance and that a number had been in the habit of doing so, then showed, on cross-examination of Connor, the number of assessments levied by defendant from the assessment made for January, 1901, down to and including the assessment due and payable in December, 1913, and also showed the number of assessments made for each year from 1901 to 1913 both inclusive. The books and records showing these assessments and the number and amounts paid by Gooden were then introduced in evidence by plaintiff. With this evidence before the jury they could determine whether or not Gooden had failed to pay his dues or the assessments levied against him for January, 1914, and thereafter, or whether, by advance and over payments made by him, defendant had received enough to cover the amounts it claimed were not paid. With all the evidence before the court and jury, the latter found a verdict for plaintiff and the former approved the verdict.

Now, the abstract of the record, which defendant has brought to this court in an attack upon the finding and judgment, shows the contents of these record books as to assessments and dues paid by Gooden for the years

1901-2-3-4-5 and 1906 and for the years 1912-13, but it omits or fails to show their contents as to payments by Gooden for the years 1907 to 1911 both inclusive. In other words, the abstract does not bring to us all the evidence that the court and jury had, upon which the verdict and judgment was based. In that situation how is this court able to say that the jury had no evidence on which to base its finding or that the defendant has *conclusively* shown that Gooden owed any dues or the assessments of January and thereafter and failed to pay them? Where the validity of the judgment is attacked upon the ground of the insufficiency of the evidence, or, which in this case is the same thing, that the evidence contained no issuable determinative fact to be submitted to the jury, the rule is well settled that an appellate court will not convict the trial court of error where the entire evidence is not presented in the abstract. [McCarroll v. Kansas City, 64 Mo. App. 283; Crohn v. Modern Woodmen of America, 145 Mo. App. 158; Sessinghaus Milling Co. v. Hanebrink, 247 Mo. 212; Knode v. Modern Woodmen of America, 171 Mo. App. 377, 380; O'Malley v. Heman Construction Co., 255 Mo. 386, 392.] The account of William Gooden for the years 1907 to 1911 both inclusive, which is omitted from this record, is important and material, in the light of the evidence that many members up to 1912 paid as much as a year in advance. If a member paid a year in advance he could not know how many would be needed or used in that year. The evidence shows that the assessments never ran higher than twelve a year but sometimes ran as low as eight or nine according to the number needed to pay death losses for that year. Consequently, if in such advance payments more money was paid than was needed to meet assessments for that year the excess should be applied upon subsequent assessments. Plaintiff contends that the records known as exhibits 3, 4, 5 and 6, showed the number of assessments levied, the number of assessments deceased paid, the amount he paid and that he paid all that was due from him and was, therefore, in good stand-

ing at the time of his death. The court and jury with all the records before them found that he was; and in the absence of these five years from the record we are not in a position to say they were wrong.

Defendant contends that it abstracted all that the records show, but we cannot accept this statement in opposition to the record itself which shows on its face that the records contained the account for all of said years and that the account for five of those years is not abstracted. The record also shows that the records containing the entire account was introduced in evidence by plaintiff. And from the procedure thereafter adopted by defendant, as shown by the abstract of the record, it is apparent that defendant understood that the defendant's books, as offered by plaintiff, contained the account of William Gooden for all of the years, and recognized the fact that they at least tended to support plaintiff's theory that there was a fund on hand from excess payments made by him sufficient to cover the amounts it was charged he had failed to pay.

It is also urged that if plaintiff was not satisfied with the manner in which defendant had abstracted the records showing Gooden's account, she should have filed an additional abstract supplying the deficiency. But it is not incumbent upon the one who has recovered the judgment to maintain it. The burden of showing its invalidity is on the one attacking the judgment. [Brand v. Cannon, 118 Mo. 595, 597-8.] Section 2048, Revised Statutes 1909, provides that the respondent "may if dissatisfied" with appellant's abstract file an additional abstract according to the rules of the court; and Rule 15 provides that the respondent shall file such additional abstract "as he may deem necessary." But inasmuch as it was not necessary for plaintiff to show what was disclosed by the account of Gooden for the years omitted, it was not incumbent upon her to supply the omission. Of course, if the appellant's abstract did not *show on its face* that there were some records not abstracted, then it would have been incumbent upon respondent to show that fact by furnishing an abstract

of the omitted part. It is when this is the case that we understand it is necessary for the respondent to file an additional abstract if he would question the completeness of his opponent's abstract.

Finding, as we do, that upon the question of abandonment there was an issue for the jury, and that upon the question of suspension for non-payment we cannot, owing to the state of the record, say there was no question for the jury upon that issue, we are compelled to affirm the judgment. It is so ordered. The other judges concur.