MINNIE OLSEN, Respondent, v. SUPREME COUNCIL OF THE ROYAL ARCANUM, a Foreign Assessment Insurance Company under Art. 2, Chap. 61, R. S. of Mo., 1909, Appellant.

St. Louis Court of Appeals. Opinion Filed June 8, 1920.

1. **INSURANCE: Fraternal Beneficiary Associations: License to Do Business: Prima-facie Evidence of Kind of Society.** In an action on a benefit certificate where the issue was raised as to whether defendant company was a fraternal beneficiary society or not, the defendant, by introducing in evidence a duly certified copy of its license to do business as a fraternal beneficiary society, issued by the proper authority in this State, made out a prima-facie case that it was such a society, under section 16, Laws of 1911, p. 290.

2. ————: ————: **Penalties for Vexatious Refusal to Pay: Attorney's Fees: Not Amendable to Statute.** In view of section 7109, Revised Statutes 1909, as amended in section 5 of Laws of 1911, p. 284, exempting fraternal beneficiary societies from the provisions of insurance laws, etc., a fraternal beneficiary society is not amenable to section 7068, Revised Statutes 1909, as amended in Laws of 1911, p. 282, subjecting insurance companies to a penalty for vexatious refusal to pay, and attorney's fees.

3. ————: ————: **Agreement to Pay Assessment by Subordinate Lodge: Not Waiver of Payment.** Where the by-laws of a fraternal beneficiary society provided that "any member failing to pay any

regular assessment before the time prescribed for such payments shall stand suspended from the order and all benefits therefrom," and that though a subordinate local council could "authorize the payment of members' assessments as a loan or gift from its general fund, such payment must be made to the collector before the time fixed for such payment to avoid suspension under the law," and that a "by-law or resolution whereby a council agrees to pay an assessment for a member as a loan is not binding upon the supreme council unless complied with, etc.," and that "if the collector shall omit to pay within the prescribed time an assessment the member stands suspended, etc.," a member who failed to make the necessary payments stood suspended, despite the by-laws of the subordinate lodge providing for a delinquent fund for the payment of assessments of members who were delinquent; the agreement of the subordinate lodge to pay delinquent assessments did not waive the payment of such assessments so as to relieve an action of forfeiture on that ground, in view of sections 9, and 22, Laws 1911, pp. 286 and 292.

4. ———: ———: **Evidence: Certificate Kept Alive by Overpayments of Assessments: Question for the Jury.** In an action on a fraternal benefit certificate where the defense was that the insured was suspended for the non-payment of assessments, etc., the question as to whether or not the society had in its possession, through overpayments by insured, sufficient money of insured to keep alive such benefit certificate up to the time of insured's death, *held* sufficient prima facie, as appears from the evidence adduced, to take the case to the jury on that theory.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. Granville Hogan*, Judge.
REVERSED AND REMANDED.

*Frederick H. Bacon* for appellant.

*Howard C. Wiggins* of counsel.

*Eugene Hale* for respondent.

(1) Plaintiff made a prima-facie case by producing the policy, Plaintiff's Exhibit "A," and putting the same in evidence, and proof of death of the deceased, Lars Olson. And under defendant's affirmative proof of suspension, forfeiture, if being a Fraternal Beneficial Society; the burden of proof was on it to establish these defenses by a preponderance of the evidence. Gooden

v. M. W. A., 194 Mo. App. 666; Cruwell v. National Council Knights and Ladies of Security, 126 Mo. App. 496; Bacon Benefit Societies (3 Ed.), sec. 463; Seehorn v. Catholic Knights of America, 95 Mo. App. 233; Johnson v. Hartford Life, 271 Mo. 562.   (2)   A member of a mutual benefit society cannot be in default of assessments where the amounts should be taken care of by defendant in overpayments through a long series of years.   Which in equity and good conscience should be applied until exhausted.   National Council of Junior Order v. Thomas, 163 Ky. 364.   (3)   The defendant had full and complete   knowledge of the practice in Victoria Council, having approved the by-laws under which Victoria Council originated ' and conducted its practice, which was more than waiver by the defendant. *It was the law and practice of the defendant itself; and its Deputy and Grand Regents* were regularly visiting Victoria and reporting under section 134A, Defendant's Exhibit 5, additional abstract.   Watkins v. Yoemen, 188 Mo. App. 636; Griffith v. Royal Arcanum, 182 Mo. 644; Seehorn v. Catholic Knights of America, 95 Mo. App. 233; McMahan v. Maccabees, 151 Mo. 522.   (4)   The defendant's attempt to prove its defense of suspension by bald hearsay evidence without any foundation or accounting for the loss of evidence of the first class and violates the time-honored rules of evidence.   Barrie v. United Railways Co., 125 Mo. App. 99; Hannum v. Wadiwell, Ins. Sup., 135 Mo. 153, l. c. 162; Karch v. Knights of Honor, 137 Mass. 371; Wolff v. Matthews, 39 Mo. App. 376.   (5)   Whether the defendant is an assessment insurance or a Fraternal Beneficiary Association depends not upon its having a license from the insurance commissioner of Missouri, but on the nature and conduct of its business in the State of Missouri. Kribs v. United Order of Foresters, 191 Mo. App. 524, l. c. 545; Ordelhide v. Mutual Benefit Association, 268 Mo. 339; Goodson v. National Masonic Accident Association, 91 Mo. App. 339.   (6)   "The court cannot take judicial notice of the character of Fraternal Benefit Association."   The law requires the defendant to prove

every fact or point to establish that it is a Fraternal Benefit Association under the laws of the State of Missouri, to-wit: It is compelled to prove that it has complied with sections 10 and 25 and 26A of the Act of 1911, page 293, Laws of Missouri. Dowing v. Woodmen of the World, 201 S. W. 951; Smith v. A. O. U. W., 124 Mo. App. 181. (7) The damages and attorney's fees were properly assessed against the defendant. Mystic Circle v. Schneider, 227 U. S. 497; Barber v. Hartford Life Association, 269 Mo. 21. (8) Appellant's eighth points and authorities on the trial court's overruling his demurrer cannot be considered: "Where it is desired to have a demurrer to evidence considered by the Appellate court appellant must abstract all of the evidence of all the witnesses." Fronk v. Fronk, 159 Mo. App. 543; Doherty v. Noble, 138 Mo. 25; Meriwether v. Howe, 48 Mo. App. 148; Nash v. Brick Co., 109 Mo. App. 604.

BECKER, J.—In 1903 defendant issued to Lars Olsen a benefit certificate of insurance payable at his death, if in good standing, to his wife, Minnie Olsen. Olsen died March 8, 1917. The defendant refused to pay and plaintiff as beneficiary brought suit for $2000, the sum specified in the certificate, together with $200 penalty for vexatious refusal to pay, and $400 attorney's fees. The case was tried to a jury and a verdict found for plaintiff for $2600, and from the judgment entered in accordance therewith defendant in due course appeals.

We note that the petition alleges that the defendant company is a foreign corporation, "engaged in writing life insurance on the natural premium plan in the State of Missouri and is liable to be sued in the courts of this State as an assessment life insurance company under article 2, chapter 61, Revised Statutes of Missouri, 1909."

The defense are: First: That the defendant is a fraternal beneficiary society duly incorporated as such under the laws of the State of Massachusetts, and en-

gaged in doing business as such in the State of Missouri under license from the insurance department of said State. Second: That the insured was suspended for nonpayment of assessment for the month of January, 1917. Third: That said insured, in the month of February, 1917, elected to adandon his membership in the defendant order and discontinued the payment of the assessments therein and severed his connection with said order. Fourth: That during the month of January, 1917, plaintiff, acting as the agent of the insured and in accordance with his wishes, as well as in her own behalf, notified the collector of the local council of which the insured was a member, that the said Olsen desired to become suspended from said order and thereafter would pay no further assessments, whereby the said plaintiff became estopped from claiming anything under the benefit certificate issued to said Olsen.

The reply denied that the defendant was entitled to conduct business in the State of Missouri as a fraternal beneficiary society, and sets up an alleged waiver on the part of the defendant of its by-laws requiring the payment of assessments on a day fixed and certain.

I.

As to the issue raised, whether the defendant company is a fraternal beneficiary society or not, it is sufficient to dispose of it by stating that the defendant in due course introduced in evidence a duly certified copy of its license to do business as a fraternal beneficiary society, issued by the proper authority in this state, and thereby made out a prima-facie case that it is a fraternal beneficiary society. [Sec. 16, Laws of Missouri, 1911, p. 290; Gilmore v. Modern Brotherhood of Amer., 186 Mo. App. 445, 171 S. W. 629.] Plaintiff offered no evidence to overcome this prima-facie case, while on the other hand the record contains additional uncontradicted evidence that the society is without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries and not for profit; that it has a lodge system with ritualistic form of work and representative form of government,

and that its funds are derived from the payment of assessments by the members, and that benefits are paid only to the classes mentioned in the statute; and in addition the benefit certificate shows on its face that it is a contract of a fraternal beneficiary society. Furthermore an examination of the record discloses that an imstruction given at plaintiff's request is predicated upon the defendant being a fraternal beneficiary society, thereby admitting the character of the appellant.

## II.

It will be noted that plaintiff recovered not alone the sum of $2000, the amount stipulated in the certificate of insurance, but recovered penalty for vexatious refusal to pay, and attorney's fees, under section 7068, Revised Statutes of Missouri, 1909, as amended in the Laws of Missouri, 1911, p. 282. The defendant, as we have held above, is a fraternal beneficiary society, duly licensed as such to do business in this state and therefore is not amenable to the provisions of said section, in that section 7109, Revised Statutes of Missouri, 1909 as amended in section 5, of the Laws of 1911, p. 284, specifically provides that fraternal beneficiary societies shall be "exempt from the provisions of the insurance laws of this State . . . and no law . . . passed shall apply to them unless they be expressly designed therein," and said section 7068, Revised Statutes of Missouri, 1909, as amended, is found in the chapter on insurance entitled, "general provisions," and fraternal beneficiary societies are not expressly designated therein. It follows that it was error on the part of the trial court to have instructed the jury that if they found for plaintiff they might assess damages for vexatious refusal to pay and award the plaintiff a reasonable attorney's fee.

## III.

It is conceded that Olsen was required by the terms of his contract to pay one assessment on or before ten o'clock p. m., on the last day of each month under the penalty of *ipso facto* suspension, and that the insured, as well as plaintiff acting for her husband, intentionally refused to pay the assessment for January and February, 1917.

We note the following excerpts from plaintiff's own testimony:

Q. "You did not pay the January assessment?" A. "No; I didn't have the money."

Q. "Could you pay the February assessment?" A. "No, sir; because I wrote to my husband and told him I didn't have the money to pay and I wanted him to send it and he told me the Council would carry him for a while—said those were his rules—the by-laws, or whatever you call it."

Q. "And yet you knew you had to pay one assessment every month, or get some one to pay? That is true isn't it?" A. "Yes, sir."

Q. "But if you thought that the January assessment would be paid by the council, how about the February assessment?" A. "Well, my husband told me that they would carry that."

Q. "Pay it indefinitely?" A. "Until I could pay."

Q. "And you never went and told them you couldn't pay?" A. "No, sir, I didn't.

Section 9 of the Laws of 1911, l. 286, applicable to fraternal beneficiary associations provides that the certificate, the charter or articles of incorporation, the constitution and laws of the society and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the

member, and that any changes, additions or amendments duly made or enacted, subsequent to the issuance of the benefit certificate shall bind the member and his beneficiaries and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership.

Section 22 of the same law (Laws of 1911, p. 292) provides that the constitution and laws of the society may provide that no subordinate body, nor any of its officers or members shall have the power or authority to waive any of the provisions of the laws or constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members.

By agreement of counsel for plaintiff and defendant below a duly certified copy of the code of the constitution and laws of the Royal Arcanum covering the Supreme, Grand and Subordinate Councils and members was introduced in evidence with the understanding that either party could read such portions thereof as they deemed relevant. Various sections of this code were read to the jury, among which we find the following:

Sec. 176. (1) "A Council is a body of limited jurisdiction, having no powers except those conferred upon it by the Supreme Council, and such as are implied as necessary to the exercise of powers expressly granted."

(3) "The Council and its officers, in performing the duties and administering the powers provided by the Laws of the Order, shall be the agent or agents of the members thereof, and not the Supreme Council, and no act or failure to act by the Council or by any officer or member thereof shall create, or be construed so as to create, any liability on the part of the Supreme Council."

"Neither the Council or its officers or any one or more thereof shall waive the performance of, or compliance with, any law or requirement of the Supreme

Council, and such waiver shall be inoperative to bind, or create any liability upon, the Supreme Council.''

Sec. 251. (1) ''A by-law or alteration thereof must not contravene or conflict with the Constitution of the Supreme, Grand or Subordinate Councils, nor the General Laws and principles of the Order, nor repeat any portion of the said Constitutions and Laws.''

(2) ''No provision shall be made either by By-law, resolution or vote, for the temporary suspension of a By-law, nor for the nullification of the provisions of any law, rule or regulation adopted by the Supreme Council.''

Sec. 252. ''All By-laws and alterations thereof must, after adoption by the Council, be submitted to the committee on Laws of the Supreme or Grand Council, and shall take effect from the date of approval by such Committee.''

252a. ''Upon the approval of By-laws by the committee on laws having jurisdiction thereof, they shall be sent to the Supreme or Grand Secretary, who shall attest the same, affix the Supreme or Grand Council seal thereto, and forward them to the Council.''

Sec. 253. ''All By-laws relating to the Widows and Orphans' Benefit Fund, Supreme Council Dues, and sick benefits and payment thereof, must be submitted to and approved by the Committee on Laws of the Supreme Council, and shall not take effect until and be operative only in the form of such approval.''

Sec. 433. (1) ''Each member of the order shall pay to the collector of his council, without notice, twelve regular assessments in each calendar year, one of which shall be due on the first day and payable before ten o'clock p. m., of the last day of each calendar month, and in addition to said regular assessments such extra assessments as may from time to time be required and levied as provided in this Title.''

(5) ''The neglect or failure of a member's agent or friend to pay for him an assessment shall not prevent his suspension.''

Sec. 436. "Any member failing to pay any regular assessment before the time prescribed for such payment in the Laws of the Order, or to pay any extra assessment of a member's assessment as a loan or gift from the notice thereof, shall stand suspended from the order and all benefits therefrom . . . ."

Sec. 438. (1) "A Council may authorize the payment of a member's assessment as a loan or gift from its General Fund; but such payment must be made to the collector before the time fixed for such payment to avoid suspension under the law."

(3) "A By-law or resolution whereby a Council agrees to pay an assessment for a member as a loan is not binding upon the Supreme Council unless it is complied with, and no claim of a member, in case the assessment is not paid, shall be recognized or valid. If the collector shall omit to pay, within the prescribed time an assessment for a member, in compliance with such resolution or By-law, the member stands suspended at the expiration of the time for payment."

The following by-laws of the local council of which the deceased was a member were read in evidence:

Sec. 1. "This council shall set apart a portion of its general fund, to be known as the "Delinquent Fund.""

Sec. 2. "The Delinquent Fund shall be placed in the hands of the treasurer of this council, subject to the warrants of the trustees of this council, to be used by them as stated in the succeeding sections of this article, and for no other purpose."

Sec. 3. "At 3 o'clock of the day on which an assessment expires, the collector shall make out a list of all members who shall have failed to pay the same and present it to the trustees, who shall pay the collector from the Delinquent Fund the full amount named on the list."

Sec. 4. "The collector shall immediately notify all members whose assessments have been paid by the Delinquent Fund, and request him to at once refund the amount with the 25 cents fine provided by section 5."

Sec. 5. ''All members whose assessments are paid from the Delinquent Fund shall pay the sum of 25 cents into the fund for each assessment so paid, in addition to the full amount of the assessment. These additional payments to form part of the fund.''

Sec. 6. ''If any member fails to refund the amount paid out by the Delinquent Fund for him with the fine of 25 cents, his assessment shall not be again paid from the fund.''

These by-laws of the defendant society, together with the plaintiff's own admission that the January and February, 1917, assessments were not paid, when taken with the fact that plaintiff has introduced no testimony showing that the Supreme Council has in any manner, way, shape or form, directly or indirectly waived the provision of its by-laws that ''any member failing to pay any regular assessment before the time prescribed for such payment in the laws of the order, shall stand suspended from the order and all benefits therefrom,'' and that ''though a council can authorize the payment of members' assessments as a loan or gift from its general fund, such payment must be made to the collector before the time fixed for such payment to avoid suspension under the law,'' and that a ''by-law or resolution whereby a council agrees to pay an assessment for a member as a loan is not binding upon the Supreme Council unless it is complied with and no claim of a member in case the assessment is not paid shall be recognized or valid;'' and that ''if the collector shall omit to pay within the prescribed time an assessment for a member in compliance with the laws, resolution or by-laws, the member stands suspended at the expiration of the time for payment,'' presents a case in which the plaintiff cannot recover upon the benefit certificate unless it be, as contended by respondent's counsel, that the insured had, during the period in which he was a member of the order, paid assessments at a rate in excess of the sum actually due upon his certificate, in accordance with the defendant's regular rates. In other words, it conclusively appears that the January and February, 1917, assessments were in fact

not paid; and consequently if a forfeiture arose by reason of the failure to pay those two assessments then it is entirely clear that the record shows that the defendant order did not in any manner whatsoever waive the payment of such assessments so as to relieve an action of forfeiture on that ground and it follows that plaintiff's first instruction, the only instruction offered by plaintiff other than one on the measure of damages and one on the credibility of the witnesses, should not have been given; for that instruction submitted the case to the jury purely upon the theory that defendant had waived the forfeiture which would otherwise have arisen by reason of the failure to pay the January and February assessments. The giving of this instruction was clearly reversible error for the reason that there is no evidence in the record to support it.

As to the question of over payment, the record before us we think contains some substantial evidence tending to show that the insured had in fact paid assessments from year to year in excess of the regular rates which were due the defendant on this benefit certificate. The evidence shows that the insured was nearly 51 years of age at the time of his application and the issuance of the benefit certificate to him in November, 1903. At the time of his death, March 8, 1917, he was 64 years of age. The evidence shows that from the time of the issuance of the certificate until January, 1906, the insured paid assessments, during nearly all of that period, at the rate of $3.80 per month; and that beginning with January, 1906, and thereafter, he paid regularly assessments of $3.50 every month, to and including November, 1916. Owing to an increase in defendant's rates the assessment for December, 1916, which was paid, was $7.80. The assessments in like sum for January and February, 1917, were not paid. Respondent offered in evidence defendant's "table of regular rates," from which it appears that the rate which the insured was obliged to pay on this certificate of $2000, that is defendant's regular rate upon a $2000 benefit certificate issued to one at the age of 51 years, as was the insured, was $3.22

per month. In other words, though this matter was not well developed at the trial below, the evidence to which we have referred makes it appear that (even without reference to the payments prior to January, 1906,) the insured for a period of nearly 11 years made over payments amounting to 28c. per month, or $3.36 per year, aggregating a sum largely in excess of $15.60 the aggregate of the two assessments for January and February, 1916, which were not paid and for which the defendant claimed a forfeiture of the certificate. And though, as said, this matter was not thoroughly developed at the trial below, the evidence touching it was not in anywise contradicted and appears to be sufficient prima facie to take the case to the jury upon the theory that the defendant had in its possession sufficient money of the insured to keep alive this benefit certificate up to the time of the insured's death. [See Gooden v. Modern Woodmen of Am., 194 Mo. App. 666, 189 S. W. 394.] However, the case was not submitted to the jury upon this theory. Though the plaintiff introduced the evidence to which we have referred above, plaintiff offered no instruction requiring the jury to find the facts necessary to be found in order to entitle plaintiff to a verdict on this theory.

It follows that the judgment should be reversed and the cause remanded, for further proceedings not inconsistent with the views expressed above. It is so ordered.

*Reynolds, P. J.,* and *Allen, J.,* concur.