ADAIR COUNTY COAL COMPANY et al., MORTON COAL COMPANY, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.*

In the Kansas City Court of Appeals, April 7, 1924.

1. APPEAL AND ERROR: Final Judgment: Special Order after Final Judgment: A Stipulation Providing for Dismissal of Injunction Suit Leaving Open Question of Who was Entitled to Deposit after Dismissal, Held "Final Judgment" or "Special Order" after Final Judgment from Which an Appeal Could be Taken. Section 1469, Revised Statutes 1919, providing for an appeal from any "final judgment in a case, or from any special order after final judgment in the cause," authorizes an appeal from an order paying a deposit to plaintiff in an injunction suit according to a stipulation dismissing the suit, and leaving open the question of who was entitled to the deposit, and that such question as to disposition of deposit should be the only controversy remaining to be determined, since the stipulation makes the judgment of dismissal a final judgment as to the merits of the injunction, in which case the order of the court would be a "special order after final judgment," but, if this be not true, then as the question of who should receive the deposit was the only question remaining for decision, the order was a final judgment because it exhausted the jurisdiction of the trial court and ends the proceeding.

Adair Co. Coal Co. v. C., B. & Q. R. R. Co.

2. ———: **Abstract of Record Held Sufficient on Appeal Where the Transcript of Judgment and Order Allowing Appeal Properly Certified were Fully set out.** If the recital in the abstract of record proper as to making of an order authorizing payment of deposit to plaintiff under terms of stipulation dismissing an injunction suit, or the rendition of judgment appealed from was insufficient, the appeal will not be dismissed where the transcript of the judgment and order allowing appeal, certified to by the clerk, sets out the same in full.

3. ———: **Burden on Appellant to Show That a Judgment is Wrong.** Appellant has the burden to affirmatively show that a judgment is wrong.

4. ———: **Judgment Will be Affirmed Where Record is in Such State that Appellate Court Cannot Say Whether Judgment is Erroneous.** If the record is in such state that appellate court cannot say whether judgment is erroneous or not, the judgment will have to be affirmed since in the absence of an affirmative showing to the contrary, the action of trial court is presumed to be correct.

5. **INJUNCTION: Pleadings: Order Made upon Issuance of Injunction against Removal of Industrial Tracks, Requiring Plaintiff to Maintain Them, Held Within Pleadings.** Where court upon issuing a temporary injunction restraining a carrier from tearing up industrial spur tracks entering plaintiff's coal mines, found that it was then plaintiff's duty to maintain the tracks, and issued an order to that effect, such order was not beyond the court's jurisdiction because it was not within the pleadings; it appearing from allegations of plaintiff's petition that it had been required by Director General of Railroads to maintain them, and that it had done so, though under protest, and that it had asked the court to make such order as to maintenance as the court might deem equitable and just.

6. **APPEAL AND ERROR: Record Held Insufficient to Authorize Appellate Court to Say Trial Court Erred in Making Order as to Disposition of Deposit upon Dismissal of Suit by Stipulation.** Upon appeal from an order paying a deposit to plaintiff in an injunction suit, restraining a carrier from removing industrial tracks entering plaintiff's coal mines, which suit had been dismissed under a stipulation leaving open the question of who was entitled to deposit, record *held* insufficient to authorize appellate court to say trial court erred in making such order.

---

*Headnotes 1. Appeal and Error, 4 C. J., sections 258, 352; 2. Appeal and Error, 4 C. J., section 2081 (Anno); 3. Appeal and Error, 4 C. J., section 2662; 4. Appeal and Error, 4 C. J., section 2662; 5. Injunctions, 32 C. J., section 625; 6. Appeal and Error, 4 C. J., section 2350.

Appeal from Circuit Court of Adair County.—*J. A. Cooley*, Judge.

AFFIRMED.

*H. J. Nelson, Campbell & Ellison* and *J. G. Trimble* for appellant.

*C. E. Murrell* for respondents.

TRIMBLE, P. J.—The Adair County Coal Company and the Billy's Creek Coal Company brought injunction against the Chicago, Burlington & Quincy Railroad Company to prevent it from taking up a certain stretch of railroad track about six miles in length, in Adair county, leading from a point on defendant's railway, at Youngstown, up Billy's Creek Valley to certain coal mines therein.

In said injunction suit, the Morton Coal Company deposited $500 as per stipulation, in which stipulation the injunction suit was dismissed. The injunction suit was brought on September 3, 1920. The temporary restraining order was issued, but the suit did not come to trial. On July 27, 1921, the above-mentioned stipulation was filed, and the deposit was made and the suit dismissed, all in accordance with the terms of the stipulation. On January 19, 1922, defendant filed a motion praying an order on the clerk to pay the $500 deposit to it and on May 15, 1922, the Morton Coal Company, as successor to the Billy's Creek Coal Company, filed a motion praying an order on the clerk to pay the deposit to it. The court, on May 15, 1922, took up both motions, and sustained the Morton Coal Company's motion but overruled defendant's motion. After an unsuccessful motion for new trial, the defendant has appealed.

Respondent, the Morton Coal Company, has filed a motion to dismiss the appeal. One ground of the motion

to dismiss is that the statute allows no appeal from such an order as is herein complained of.

In our view the point is untenable. The stipulation expressly provides that the injunction suit should be dismissed, reserving and leaving open the question of who was entitled to have the $500 deposit. Appellant's abstract shows that the injunction suit was dismissed as per stipulation, though it does not set out *in haec verba* the order of the judgment of dismissal. Section 1469, Revised Statutes 1919, showing what matters are appealable, says: "Any party to a suit, aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the Constitution, may take his appeal to a court having appellate jurisdiction from . . . any final judgment in a case, or from any special order after final judgment in the cause." It would seem to be clear that, in view of the contractual terms of the stipulation and the further provision therein that the question of the disposition to be made of the deposit "shall be the only controversy remaining to be determined in this cause" makes the judgment of dismissal a final judgment *as to the merits of the injunction,* in which case the order of the court on the motion would be a "special order after final judgment." But, if this be not true, then, as the question of who should receive the deposit was the only question remaining for decision, the order of the court on the motion is a final judgment because it exhausts the jurisdiction of the trial court, and ends the proceeding. [State ex rel. v. Bland, 189 Mo. 197, 216.]

The point that the appeal should be dismissed because the appellant's abstract fails to show that the various proceedings on the motion were had or that any record entries thereon were made in the circuit court of Adair county is without merit. Clearly it does. There is no contention that any such entries were insufficient nor is the question involved herein dependent upon the form or sufficiency of the entries in the injunction suit

prior and preliminary to the order or judgment appealed from. Even if the recital in the abstract of the record proper as to the making of this order or the rendition of judgment appealed from were insufficient, still the transcript of the judgment and order allowing appeal, certified to by the clerk, sets out the same in full. [State ex rel. v. Little River Drainage District, 271 Mo. 429; Monroe v. Chicago, etc., R. Co., 219 S. W. 68, 69.] Respondent's motion to dismiss the appeal must therefore be, and is, overruled.

In considering the merits of the appeal, however, the question arises as to whether there is sufficient evidence preserved in the record to enable us to say the court erred in refusing to pay the deposit to appellant. Of course, it is appellant's burden to affirmatively show the judgment is wrong, not respondent's to uphold it, and therefore, if the record is in such state that we cannot say whether the judgment is erroneous or not, the judgment will have to be affirmed since, in the absence of an affirmative showing to the contrary, the action of the trial court is presumed to be correct. [Gooden v. Modern Woodmen, 194 Mo. App. 666, 676.]

The record shows that the two motions to have the deposit turned over to the contending parties respectively were heard and considered together; and on said hearing, the following was introduced by appellant:

1. The petition for injunction. 2. The order of court made on the issuance of the temporary injunction. 3. The aforesaid stipulation between the parties, filed in the injunction suit on the 27th day of July, 1921, under which the $500 was deposited by the Morton Coal Company and the injunction suit dismissed.

In said hearing on the motions, it was agreed that—

"between the 25th day of January, 1921, and said 11th day of July, 1921, the defendant did not operate its trains over the tracks described in said stipulation, as it had theretofore been doing. That defendant, since said last-named date, has expended as much as $500 upon

said tracks for the purpose of putting the same into the condition it would have been in had defendant operated its trains over said tracks between said dates and had plaintiff Morton Coal Company repaired and maintained said tracks in a usable condition between said dates.''

And the record then recites that ''this was all the evidence in the case.''

The allegations in the petition for injunction were to the effect that the Adair County Railroad Company was chartered by the State to build and operate a railroad as a common carrier of freight and passengers from a point on defendant's railroad at Youngstown, Adair County, Missouri, up Billy's Creek Valley a distance of about six miles, and said Adair County Railroad Company, exercising the right of eminent domain, built the track provided for by its charter; that after said track was constructed and the line of railroad was in operation as a common carrier, numerous coal mines were opened up, developed and operated along said track, one of which was owned by plaintiff, Adair County Coal Company, and the other by Billy's Creek Coal Company; that during the United States Government's Operation of Railroads and under Director General McAdoo's order No. 15, it became necessary for the plaintiffs to advance about $40,000 to repair and maintain said track which same was advanced by them under protest in order to comply with the Director General's order; that Federal operation of railroads ceased March 1, 1920, and Federal supervision ceased September 1, 1920, and all of the property and tracks of the Adair County Railroad were turned over to the defendant who is now in possession of same; that up to September 1, 1920, plaintiffs were required to maintain said tracks and keep them in repair for the Federal operation of trains thereover; that defendant refused to maintain said tracks after September 1, 1920, and was threatening to tear up and remove the track; that if such be done, complainants' mines would become worthless, since they would have no means of shipping coal.

It was further alleged in said petition that plaintiffs did, on September 1, file a petition with the Missouri Public Service Commission, asking for relief, but that in due course of procedure the cause could not be heard for at least thirty days and during such time irreparable injury would be inflicted upon plaintiffs unless defendant was restrained from tearing up said track and from abandoning its train service thereover during the pendency of said proceeding before the Public Service Commission; and the court was asked to "make such order concerning the upkeep of said tracks during the pendency of said action before the public Service Commission as to this court may seem just and equitable." And an injunction restraining defendant from tearing up the track until the further order of the court was prayed.

The application for temporary injunction came on for hearing before the court on September 13, 1920, and a decree was rendered, reciting that the court, having seen and heard plaintiffs' petition and heard the objections of defendant, found—

"that the complainants herein should be required to maintain the track in their petition described until the further orders of this court in this cause of action, and that the defendant, Chicago, Burlington & Quincy Railroad Company, should be restrained and enjoined from removing said tracks and from refusing and failing to operate their trains over said tracks as heretofore it has been doing, provided the said plaintiffs shall maintain the track in repair such as to make it usable for the purpose of such operation.

"It is therefore ordered and decree by the court that plaintiffs herein be and they are hereby required to repair and maintain the tracks described in their petition in Billy's Creek Valley leading to their coal mines until the further order of this court."

The decree further ordered that defendant be enjoined from removing said track or abandoning train

service thereon until further orders ''provided the said plaintiffs shall comply with this order and repair and maintain said tracks in a usable condition,'' and it was further ordered that defendant, at the October term, show cause why. the temporary injunction should not be made permanent.

The stipulation filed by the parties on July 27, 1921, recites that it is agreed between them that—

The Morton Coal Company, being the successor of the Billy's Creek Coal Company, now enters its appearance as a party plaintiff; that as the Chicago, Burlington & Quincy Railroad Company was under the duty of maintaining the track from and after July 11, 1921, *pursuant to an order of the Public Service Commission of that date,* until such time as the railroad company should procure a suspension of said order by the circuit court in a review proceeding or until such time as the order of the Public Service Commission may be vacated, if ever, and as the plaintiffs have spent no money in maintenance after January 25, 1921, upon that part of the track beyond the switch of the Adair County Coal Company, and it being the defendant's contention that plaintiffs had failed to fully perform their duty in the matter of maintenance of said tracks prior to January 25, 1921, so that in order to comply with the order of the Public Service Commission, effective July 11, 1921, said defendant now claims it would be required to do work of maintenance that should have been done prior to that time by plaintiffs.

The stipulation then went on to further recite that—

''Now, therefore, in order to settle the controversy it is agreed that five hundred ($500) dollars is the amount that would have been spent by said plaintiffs to have had said tracks on July 11, 1921, in the condition they would have been in if they had been in use up to that time and had been maintained pursuant to the interlocutory order of this court made September 13, 1920; and it is further agreed that the plaintiffs shall pay to the clerk of this

court said sum of five hundred ($500) dollars as a de-
posit to be held subject to the order of the court, and
that said court shall in due course determine whether
said money shall be paid over to the defendant herein
or whether it shall be returned to the plaintiff herein
and the temporary restraining order shall be vacated on
the making of said deposit.

"It is further stipulated and agreed that the fore-
going question shall be the only controversy remaining
to be determined in this cause and that plaintiffs and de-
fendant hereby voluntarily dismiss and take non-suit as
to all other issues stated or which might have been stated
or litigated herein and that neither the plaintiffs nor the
defendant shall by such decision as to said deposit or
by such dismissal and nonsuit be prejudiced in any way
or to any extent in the proceeding heretofore had be-
tween these parties before the Public Service Commis-
sion of Missouri involving said tracks and now pending
in this court as a review proceeding, nor shall the ac-
tion of the parties plaintiff and defendant in so taking
non-suit prejudice the rights of either in any other or
further proceeding at law or in equity or before the Pub-
lic Service Commission of Missouri in relation to any
issue or matter growing out of or connected with the con-
troversy in relation to said tracks, it being understood
that said dismissal by plaintiffs shall not result in liability
against any of said plaintiffs under the injunction bond
heretofore filed by a part of them, the defendant waiving
any claim for damages on said injunction bond."

In addition to all of the foregoing, it appears, from
statements in the briefs on both sides, that the tracks
in question were merely industrial tracks and not used
in the business of common carriage.

As heretofore stated, the question arises, whether
there is sufficient in the record to justify us in interfering
with the court's disposition of the deposit in turning it
over to the Morton Coal Company. It made the deposit,
and the question of whether defendant would be entitled

to receive it or whether it should be turned back to the Morton Coal Company was not dependent at all upon the outsome of the injunction suit because the agreement was that the injunction should be dismissed with the right to receive the deposit left as the sole remaining question to be determined by the court dependent upon the final result of the proceedings before the Public Service Commission and the result of a review of its order by the circuit court. There is nothing in the record to show what the outcome of either of these proceedings was, except that it appears from the stipulation that defendant was under the duty of maintaining the track from and after July 11, 1921, pursuant to the Public Service Commission's order of that date, which would doubtless imply that, *under said order at that time,* it was the plaintiffs' duty to maintain them prior to July 11.

In addition to this implication, the court, in issuing the temporary injunction, found that it was then plaintiffs' duty to maintain the track, pending the suit, and made the temporary injunction with the proviso that they should obey the court's order in that respect. We cannot assent to plaintiffs' claim now that such an order was beyond the court's jurisdiction because it was not within the pleadings. The allegations of plaintiffs' petition ought to be considered, and from their own allegations it appears that they had been required by the Director General to maintain them, and that they had done so, though under protest, and in their petition they asked the court to make such order as to maintenance as the court might deem equitable and just.

The court, in response to that, made such order and issued the injunction conditioned 'upon the plaintiffs' obeying the said order. The stipulation shows that the plaintiffs, who were predecessors of Morton Coal Company, obeyed it at least up to and until January 25, 1921. Hence we do not think the order was beyond the scope of the pleadings or outside of the court's jurisdiction.

The record may, therefore, be said to show that, *as matters stood at the time the stipulation was filed,*

with the order of the Public Service Commission as then existing and in force, it was incumbent on plaintiffs to repair the tracks, and the money deposited would be liable to become defendant's if the Commission's order were not changed and the defendant performed the duty of repairing the track.

The stipulation shows that plaintiffs spent no money for maintenance after January 25, 1921, "on that part of the track above or beyond the switch of the Adair County Coal Company." And the stipulation further shows that it was the defendant's *contention* that it would be required to do work of maintenance that should have been done prior to July 11, 1921, the date at which the Public Service Commission *at that time* held the defendant's maintenance should begin. The stipulation further shows that $500 is the agreed amount "that would have been spent by plaintiffs to have had said tracks in the condition they would have been in if they had been in use up that time and had been maintained pursuant to the interlocutory order" made September 13, 1920. And the parties agreed that defendant, after the 11th day of July, 1921, expended as much as $500 on said track for the purpose of putting the same into the condition it would have been in . . . had plaintiff Morton Coal Company repaired and maintained said tracks."

But notwithstanding the record discloses all that is set out in the foregoing, the question still remains, has the appellant brought up enough of the record to enable us to say the court erred in refusing to turn the deposit over to it?

Manifestly, the terms of the stipulation do not mean that it was plaintiffs' duty, absolutely and *in fact,* to maintain the track after January 25 and up to July 11, 1921, but only that *under the order* of the Public Service Commission *as it then stood,* such was its duty. If the plaintiffs were conceding that, as a matter of absolute fact, it was their duty to maintain the track, there would have been no sense in making a deposit of the money

and leaving the question of the disposition thereof to be determined in the future. The stipulation shows on its face that an attempt was to be made to have the Commission's order changed, or reviewed, or both. (And from statements in the briefs both of these were undertaken.) And the stipulation also clearly shows that the parties differed in their contentions as to who should be properly required to repair or maintain the track after January 25, 1921 (when the defendant ceased running its trains), up to July 11, 1921, and it was solely because of this difference that the stipulation was entered into and the deposit made.

Now, the fact that the Public Service Commission on *July* 11, 1921, held it to be defendant's duty to maintain the track, even though that be an implied holding that it was plaintiffs' duty prior thereto, is no evidence that such order was therefore adhered to or was affirmed on review. Nor is it any evidence that *at the time the motions concerning the deposit were heard,* the decision as to plaintiffs' duty was the same as at the time of the filing of the stipulation. It cannot be presumed that such ruling was the same and in effect at the latter time on the theory that when a state of facts or condition has been once shown to exist it will be presumed to continue, in the absence of anything to the contrary; because the judgment of the trial court disposing of the fund, is inconsistent therewith. And unless appellant affirmatively shows the judgment to be wrong, it is presumed to be correct. As stated before, the record is silent on what was the result of the proceedings concerning the Public Service Commission's *final* ruling, or the validity or meaning and extent thereof. The trial court cannot be convicted of error on matters *de hors* the record. In addition to the showing disclosed on the face of the record that proceedings were to be undertaken affecting the ruling of the Commission and that the deposit was made in view of that fact and because of the different contentions as to whose duty it was to repair the track, it is

216 M. A.—40

conceded that "in order that this court may have the understanding of the matter the circuit court had in passing upon the motion, it will be necessary to state some of the facts brought out in" the proceedings before the Public Service Commission and in the writ for review. But, of course, unless the evidence of such facts are incorporated in the record, we cannot consider them.

It appears also that defendant's claim of being entitled to receive the deposit is somewhat dependent upon or grows out of a contract under which the track was originally built, but so such contract is shown in the record. Furthermore, while the Director General's order No. 15 is not shown in the record, and we do not know what it was, we may well apprehend that it merely prevented the expenditure of governmental railroad funds on the repair and maintenance of industrial tracks and did not of itself, create any obligation or legal duty upon the original plaintiffs to repair or maintain such tracks, as no mere order could have that power.

It follows that we cannot disturb the judgment and consequently it is affirmed. All concur.